Cami M. Perkins, Esq.
Nevada Bar No. 9149
James A. Kohl, Esq.
Nevada Bar No. 5692
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Facsimile: (702) 567-1568
cperkins@howardandhoward.com
jkohl@howardandhoward.com

and

Leib M. Lerner
(CA Bar No. 227323)
Jacob A. Johnson
(GA Bar No. 849407)
*Admitted Pro Hac Vice*
ALSTON & BIRD LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
leib.lerner@alston.com
jacob.johnson@alston.com

Attorneys for Rushmore Loan Management Services, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>    Willie N. Moon and Adnette M. Gunnels-Moon,<br><br>        Debtors. | Bankr. Case No. 2:13-bk-12466-mkn<br><br>Chapter 13 |
| Rushmore Loan Management Services, LLC,<br>        Appellant/Cross Appellee,<br><br>v.<br><br>Adnette M. Gunnels-Moon & Willie N. Moon,<br>        Appellees/Cross Appellants. | District Court Case No. 2:22-cv-01126-APG<br><br>**RUSHMORE'S OPENING BRIEF** |

1

**CORPORATE DISCLOSURE STATEMENT**

2    Appellant/Cross-Appellee Rushmore Loan Management Services, LLC

3  ("Rushmore") is a Delaware limited liability company whose sole member is

4  Roosevelt Management Company, LLC.  No other entity owns, directly or indirectly,

5  more than 10% of Rushmore's membership interests.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2    JURISDICTIONAL STATEMENT ................................................................1

3    ISSUES PRESENTED ...............................................................................2

4    STANDARD OF REVIEW .........................................................................2

5    INTRODUCTION ......................................................................................4

6    FACTS ........................................................................................................4

7    SUMMARY OF ARGUMENT .................................................................10

8    ARGUMENT ............................................................................................12

9         PART I.      Punitive Damages ....................................................12

10             A.    Legal Standard ..............................................12

11                  1.    Overview of § 362(k) ............................12

12                  2.    Prerequisites for an Award of Punitive Damages Under § 362(k) ......................................................12

13                  3.    Constitutional Limitations on Punitive Damages – The *BMW* Test ...............12

14                       i.    *BMW* Guidepost #1: Reprehensibility .....................13

15                            a.    Type of Harm.......................13

16                            b.    Disregard for Health and Safety of Others .....14

                              c.    Financially Vulnerable Targets......................14

17                            d.    Repetition of Conduct....................................15

18                            e.    Intentionality of Harm ...................................15

19                       ii.   *BMW* Guidepost #2: Actual Harm ...........................15

20                       iii.  *BMW* Guidepost #3: Comparison to Statutory Penalties and Comparable Cases................................16

21                  4.    Constitutional Limitations on Awarding Punitive Damages Based Upon Harm to Third Parties ....................................16

22             B.    Application of the Law to the Punitive Damages Award..............17

23                  1.    Summary of the Bankruptcy Court's Original Ruling Incorporated into the Remand Ruling ...............................17

24                  2.    Analysis of the Bankruptcy Court's Remand Ruling..........20

25                       i.    The Bankruptcy Court Punished Rushmore for Willie's Noncompensable Injuries...............................20

26                       ii.   The Bankruptcy Court Punished Rushmore for Its Successful Appeal and Good Faith Defenses .........22

27                       iii.  The Bankruptcy Court Punished Rushmore for Calling the Debtors' Failed Discharge Claim Unsuccessful ........................24

28

RUSHMORE'S OPENING BRIEF

iv.    The Bankruptcy Court Erroneously Justified its Award on Deterrence ................................................26

C.    Due Process Permits Minimal Punitive Damages Here, If Any....28

1.    *BMW* Guidepost #1 – Reprehensibility ...............................28

2.    *BMW* Guidepost #2 – Comparison of Punitive Damages to Harm ...........................................................................30

3.    *BMW* Guidepost #3 – Comparison to Comparable Cases and Statutory Penalties .........................................33

PART II.    Legal Fees .............................................................................33

A.    The Bankruptcy Court Erred by Awarding Adnette Attorney Fees Under § 362(k) Where She Suffered No Pre-Litigation Stay-Related Injuries ...............................................................33

B.    The Bankruptcy Court Erred by Awarding Adnette Attorney's Fees Under § 362(k) For Attorney Time Spent on the Failed Discharge Violation Claims and Willie's Failed § 362(k) Claim .36

C.    The Bankruptcy Court Erred by Awarding Adnette Appellate Attorney Fees Under § 362(k) On the Erroneous Basis She Prevailed on Appeal.........................................................39

PART III.    Withdrawal of Reference ................................................40

CONCLUSION..........................................................................................41

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS...........................

CERTIFICATE OF SERVICE ................................................................

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*,
   803 F.3d 1095 (9th Cir. 2015) ...................................................18, 19, 31, 36, 37

*Bains LLC v. ARCO Prods. Co.*,
   405 F.3d 764 (9th Cir. 2005) ..........................................................................27

*Barton Props., Inc. v. Blaskey (In re Blaskey)*,
   2016 Bankr. LEXIS 2900 (B.A.P. 9th Cir. Aug. 8, 2016) ..................................3

*BMW of North America v. Gore*,
   517 U.S. 559 (1996)..............................................................................*passim*

*by United States v. Hinkson*,
   585 F.3d 1247 (9th Cir. 2009) .....................................................................2, 12

*Conboy v. Wynn Las Vegas, LLC*,
   2013 U.S. Dist. LEXIS 55558 (D. Nev. Apr. 18, 2013) ...................................14

*Cooper v. Morales*,
   535 F. App'x 425 (5th Cir. 2013) .......................................................................29

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990)..........................................................................................2, 12

*Dawson v. Wash. Mut. Bank (In re Dawson)*,
   390 F.3d 1139 (9th Cir. 2004) ......................................................................34, 36

*Easley v. Collection Serv. of Nev.*,
   910 F.3d 1286 (9th Cir. 2018) .......................................................3, 31, 34, 36

*Eskanos & Adler, P.C. v. Roman (In re Roman)*,
   283 B.R. 1 (B.A.P. 9th Cir. 2002) .......................................................................36

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008)...........................................................................................15

*Exxon Valdez v. Exxon Mobile Corp. (In re Exxon Valdez)*,
   490 F.3d 1066 (9th Cir. 2007) (*reversed on other grounds*, 554 U.S. 471
   (2008)) ........................................................................13, 14, 15, 20

*Fernandez v. G.E. Cap. Mortg. Servs. (In re Fernandez)*,
    227 B.R. 174 (9th Cir. BAP 1998) ..................................................... 12, 33

*Hutchings v. Ocwen Fed. Bank, FSB (In re Hutchings)*,
    348 B.R. 847 (Bankr. N.D. Ala. 2006) ..................................................... 34, 35

*In re Frasier*,
    613 B.R. 271 (Bankr. W.D. Wis. 2020) ..................................................... 31, 35

*In re Grand*,
    2009 Bankr. LEXIS 743 (Bankr. D. Haw. Jan. 23, 2009) ..................................... 32

*In re Trueman*,
    2015 Bankr. LEXIS 4573 (Bankr. D. Nev. Feb. 12, 2015) ..................................... 19

*Laymon v. Lobby House, Inc.*,
    613 F. Supp. 2d 504 (D. Del. 2009) ..................................................... 29

*Leatherman Tool Grp. v. Cooper Indus.*,
    285 F.3d 1146 (9th Cir. 2002) ..................................................... 27

*McHenry v. Key Bank (In re McHenry)*,
    179 B.R. 165 (B.A.P. 9th Cir. 1995) ..................................................... 31, 32, 35

*Moon v. Rushmore Loan Mgmt. Servs., LLC (In re Moon)*,
    2021 Bankr. LEXIS 299 (B.A.P. 9th Cir. Feb. 4, 2021) ..................................... 25

*Orange Blossom Ltd. P'ship v. S. Cal. Sunbelt Developers, Inc. (In re S. Cal.
    Sunbelt Developers, Inc.)*,
    608 F.3d 456 (9th Cir. 2010) ..................................................... 30

*Page Ventures, LLC v. Ventura-Linenko (In re Ventura-Linenko)*,
    2011 U.S. Dist. LEXIS 40299 (D. Nev. Apr. 1, 2011) ..................................... 19

*Payne v. Jones*,
    711 F.3d 85 (2d Cir. 2012) ..................................................... 29

*Philip Morris USA v. Williams*,
    549 U.S. 346 (2007) ..................................................... 14, 16, 17, 22

*Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life
    Activists*,
    422 F.3d 949 (9th Cir. 2005) ..................................................... 3, 13, 15, 16

*Richardson v. Select Portfolio Servicing, Inc. (In re Mitchell)*,
    2021 Bankr. LEXIS 2090 (B.A.P. 9th Cir. Aug. 3, 2021) ................................32

*Sec. Farms v. Int'l Bhd. of Teamsters*,
    124 F.3d 999 (9th Cir. 1997) ...........................................................................40

*Snowden v. Check into Cash of Wash., Inc. (In re Snowden)*,
    769 F.3d 651 (9th Cir. 2014) ....................................................................2, 12

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) ..............................................................................*passim*

*Stinson v. Bi-Rite Rest. Supply Inc. (In re Stinson)*,
    295 B.R. 109 (B.A.P. 9th Cir. 2003) *aff'd in relevant part* 128 Fed. App'x
    30 (9th Cir. 2005) .......................................................................................32, 37

*Sundquist v. Bank of America, N.A.*,
    566 B.R. 563 (Bankr. E.D. Cal. 2017) ...........................................................18

*Taggart v. Lorenzen*,
    139 S. Ct. 1795 (2019) .....................................................................................25

*TXO Prod. Corp. v. All. Res. Corp.*,
    509 U.S. 443 (1993) .........................................................................................14

*United States v. Horvath*,
    492 F.3d 1075 (9th Cir. 2007) ...........................................................................2

*United States v. Lummi Nation*,
    763 F.3d 1180 (9th Cir. 2014) ...........................................................................3

*United States v. Luong*,
    627 F.3d 1306 (9th Cir. 2010) ...........................................................................3

*White v. Ford Motor Co.*,
    500 F.3d 963 (9th Cir. 2007) ...........................................................................29

**FEDERAL STATUTES**

11 U.S.C. § 362....................................................................................*passim*

11 U.S.C. § 524..................................................................................................5

12 U.S.C. § 2605(f)(1) ................................................................................ 33

15 U.S.C § 1692k(a)(2) ............................................................................... 33

28 U.S.C. § 157(d) ..................................................................................... 40

28 U.S.C. § 158 ............................................................................................ 1

28 U.S.C. § 1334 .......................................................................................... 1

47 U.S.C. § 227(b)(3) ................................................................................ 33

**RULES**

Bankruptcy Court LR 1001(b) ...................................................................... 1

RUSHMORE'S OPENING BRIEF

**JURISDICTIONAL STATEMENT**

1   This Court had jurisdiction over the Debtors' bankruptcy cases.  28 U.S.C.
2   § 1334(a).  The cases were referred to the United States Bankruptcy Court for the
3   District of Nevada ("Bankruptcy Court").  *See id.* § 157(b); Bankruptcy Court LR
4   1001(b).  By such referral, the Bankruptcy Court had jurisdiction to enter a final order
5   on the Debtors' joint motion seeking (A) damages under 11 U.S.C. § 362(k) and (B)
6   to hold Rushmore in contempt of their discharge injunctions.  Following the appeal of
7   such order to the United States Bankruptcy Appellate Panel (BAP) for the Ninth
8   Circuit, *see* 28 U.S.C. § 158(c)(1), the BAP remanded Adnette Gunnels-Moon's claim
9   against Rushmore under 11 U.S.C. § 362(k) back to the Bankruptcy Court.

The Bankruptcy Court's order on remand entered June 13, 2022 was a final
order on Adnette's claim against Rushmore under 11 U.S.C. § 362(k).  Rushmore filed
its notice of appeal to the Ninth Circuit BAP on June 24, 2022.  *See* 28 U.S.C.
§ 158(c)(1).  The Debtors cross-appealed to this Court, *see id.*, § 158(c)(1)(B), but
their cross-appeal was forwarded to the BAP.  The BAP thereafter transferred the
appeal to this Court.  This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

## ISSUES PRESENTED

1.      Whether, on remand from the Ninth Circuit BAP, the Bankruptcy Court's award of $500,000 in punitive damages against Rushmore violated its due process rights where the award punished Rushmore for the injury to Willie Moon, in spite of the BAP's ruling that Congress had not given Willie standing to sue, and though the underlying conduct did not harm the remaining plaintiff, Adnette Gunnels-Moon?

2.      Whether the Bankruptcy Court abused its discretion by increasing the punitive damages award against Rushmore from $200,000 to $500,000 where the award punished Rushmore for the injury to Willie Moon, in spite of the BAP's ruling that Congress had not given Willie standing to sue, and though the underlying conduct did not harm the remaining plaintiff, Adnette Gunnels-Moon?

3.      Whether the Bankruptcy Court erred by awarding attorney's fees where there were no pre-litigation damages and without deducting for attorney time spent on unsuccessful claims and appeals?

## STANDARD OF REVIEW

The award of punitive damages is subject to several standards of review. Factual findings are subject to the clear error standard. *Snowden v. Check into Cash of Wash., Inc. (In re Snowden)*, 769 F.3d 651, 657 (9th Cir. 2014).  Whether to award punitive damages and the amount of that award is reviewed for abuse of discretion except to the extent limited by the Constitution. *Id.*

"A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990), *quoted by United States v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009). Questions of statutory interpretation are reviewed *de novo*.  *United States v. Horvath*, 492 F.3d 1075, 1077 (9th Cir. 2007).  Otherwise, the "abuse of discretion test is to determine whether the trial court's application of the correct legal standard was (1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" *Hinkson,* 585 F.3d at 1261-62.

The constitutional limitations on the punitive award (*e.g.*, the application of *BMW of North America v. Gore*, 517 U.S. 559, 575 (1996) and its progeny) are reviewed *de novo*. *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 958 (9th Cir. 2005).

The award of attorney's fees is reviewed *de novo* where the issues raised on appeal are principally legal in nature. *Easley v. Collection Serv. of Nev*., 910 F.3d 1286, 1289 (9th Cir. 2018). Other aspects of the award are reviewed for abuse of discretion. *Id.*

Whether the decisions here on remand complied with the Ninth Circuit BAP's rulings is reviewed *de novo*. *United States v. Luong*, 627 F.3d 1306, 1309 (9th Cir. 2010) (compliance with Ninth Circuit mandate reviewed *de novo*); *Barton Props., Inc. v. Blaskey (In re Blaskey)*, 2016 Bankr. LEXIS 2900, at *12 (B.A.P. 9th Cir. Aug. 8, 2016) (*de novo* review of compliance with mandate); *see also United States v. Lummi Nation*, 763 F.3d 1180, 1185 (9th Cir. 2014) (if viewed as law of the case: *de novo* review of whether issue has already "been decided explicitly or by necessary implication").

**INTRODUCTION**

This case began as a challenge by a married couple—Adnette and Willie Moon (the "Debtors")—to Rushmore's collection activities on Adnette's home mortgage as violating their bankruptcy automatic stays and discharge orders.  The claim was brought years after the Debtors' bankruptcy cases ended and was filed well after Rushmore had stopped servicing Adnette's loan.

At trial, the Bankruptcy Court ruled in favor of the Debtors only on their stay violation claims, awarding $100,000 to Willie in emotional distress damages, $742.10 relating to Adnette's litigation expenses, and $200,000 in punitive damages.  On appeal to the Ninth Circuit BAP, the BAP reversed the Bankruptcy Court's award to Willie because he lacked standing.  In light of that decision, the BAP remanded the punitive damages award.  Yet, on remand, the Bankruptcy Court increased the prior joint $200,000 punitive award to $500,000 for Adnette alone, *674 times* her surviving $742.10 award.

The Bankruptcy Court committed reversible error by awarding $500,000 in punitive damages against Rushmore on remand.  Increasing the punitive damages award in light of the vastly reduced damages and because Congress chose not to give the injured party (Willie) standing violated Rushmore's due process rights and was an abuse of discretion.  Moreover, the Bankruptcy Court committed reversible error by awarding attorney fees where there was no pre-litigation damage and without excluding the time the Debtors' attorney spent pursuing the Debtors' failed discharge claims and Willie's failed stay claim.

**FACTS**

Adnette and Willie filed independently for chapter 13 bankruptcy in March 2013.  Ex. H, Remand Ruling at 2:3-5.  Although their two cases were "jointly administered," their bankruptcy "estates" and rights, and the rights of their creditors, remained distinct.  Ex. P, BAP Op. on Merits at 11.  Each of their bankruptcy filings

RUSHMORE'S OPENING BRIEF

created separate automatic stays (11 U.S.C. § 362)[1] and (later) discharge injunctions (*see* § 524).  *Id.* at 11.  Those entitled Adnette and Willie, respectively, to be free from collection efforts with respect to their old debts.  *Id.* at 13.

Adnette owned the Debtors' residence and had taken out a second mortgage serviced by Rushmore.  *Id.* at 4, 10.  Rushmore thereby was a creditor of Adnette, but not Willie.  *Id.* at 13.  The Debtors never effected formal notice to Rushmore of any bankruptcy filing until six years after those filings, when they commenced this litigation.  Ex. N, Original Ruling at 5:5-15 & n.38.  Willie had, however, over the phone told a Rushmore representative in December 2014 that "we've been in Chapter 13 [bankruptcy] for a year, almost 2 years."  *Id.* at 56.  Over the ensuing several years Rushmore (incorrectly and in violation of the stay) delivered 31 account statements and notices to the Debtors' residence and called the residence 68 times asking for Adnette.  Ex. H, Remand Ruling at 2:14-18.  Adnette never took those calls, and Rushmore only spoke with Willie (who let the calls go to voicemail if he recognized the number).  Ex. N, Original Ruling at 24:6, 21:4-8.

In September 2016, the Debtors received their bankruptcy discharge and their cases were closed a week later.  *Id.* at 5:23-6:1.  The discharge typically eliminates prepetition debts and enjoins creditors from collecting on them.  The discharge and closure of the Debtors' bankruptcy cases terminated their automatic stays.  *Id.* at 53:22-23; 11 U.S.C. § 362(c)(2)(C).  But because Rushmore did not have notice of the discharge, Rushmore continued calling Adnette's residence and sending her collection letters.  Ex. N, Original Ruling at 5:5-15 & n.38, 44.  Two years later, Rushmore informed Adnette that it would cease servicing the loan as of mid-October 2018.  *Id.* at 24:10-11.

Despite these developments, in January 2019, through the assistance of new counsel Adnette sued Rushmore, after reopening the Debtors' bankruptcy cases for that purpose, by filing the "Contempt Motion" that underlies this appeal.  *Id.* at 6:13,

---

[1] "Section" or "§" references the Bankruptcy Code, 11 U.S.C. § 101.

5

26:8.   The Contempt Motion was the first bankruptcy filing of which Rushmore received proper notice.  *Id.* at 5:5-15 & n.38.

After discovery, the Bankruptcy Court held an evidentiary hearing (the "trial"). *Id.* at 7-9.   Prior to trial, Rushmore also filed a separate but related adversary proceeding that was later dismissed.  Ex. II, BAP Op. on Adv. Fees at 5-7.   At trial, the Debtors presented four claims:

- Willie's claim that Rushmore violated the automatic stay under § 362(k);
- Willie's civil compensatory contempt claim that Rushmore violated the discharge injunction;
- Adnette's claim that Rushmore violated the automatic stay under § 362(k); and
- Adnette's civil compensatory contempt claim that Rushmore violated the discharge injunction.

Ex. N, Original Ruling at 26:23-26.

At the conclusion of trial, the Bankruptcy Court denied relief on the contempt claims because the Debtors failed to establish *when* Rushmore received notice of the entry of the discharge.  Ex. P, BAP Op. on Merits at 2.  The Bankruptcy Court granted relief to Adnette and Willie on their stay violation claims.   *Id.* at 2-3.   More specifically, the court ruled that Willie's informal notice of the Debtors' bankruptcy cases in the late 2014 call was sufficient to hold Rushmore liable for a "willful" disregard of the stay.  Ex. N, Original Ruling at 3-5.  But Adnette testified she was not injured by the stay violation, and thus was awarded no pre-litigation damages.  *Id.* at 51:9-17.   In contrast, the Bankruptcy Court found that Willie suffered $100,000 in emotional distress damages from an exacerbated PTSD condition, which originated from his service in Vietnam.  Ex. H, Remand Ruling at 18 nn.29, 30.  The Bankruptcy Court awarded to the Debtors actual damages of $742.10 for the time and expense of prosecuting the Contempt Motion.  *Id.* at 2:20-3:1; Ex. N, Original Ruling at 49:3-5, 53:16-19.  This resulted in a joint actual damages award of $100,742.10.  *Id.*

The Bankruptcy Court also awarded the Debtors $200,000 in punitive damages. *Id.* The court relied heavily on the fact that Rushmore continued to call the Debtors' residence after Willie told Rushmore that "we've been in [bankruptcy]." Ex. N, Original Ruling at 55:18-26. The court reasoned that Rushmore should have run a PACER search after talking to Willie instead of trying reach Adnette to verify Willie's statement. *Id.* at 41:5-6 & n.51. Yet the court acknowledged that Rushmore ran daily PACER searches for any bankruptcy listing "Rushmore" as a creditor and that these automatic searches should have caught Adnette's bankruptcy filing, but inexplicably failed here. *Id.* at 39:9-10 & n.46. And while Rushmore's written policy required it to act promptly in response to any notice of a borrower bankruptcy, the policy did not specifically say what to do where the only information of bankruptcy was learned in a telephone call with an unverified and unauthorized nonborrower (here, Willie). *Id.* at 34-1-37:5. So Rushmore's representative testified that Rushmore had not violated its policy. *Id.* Finding fault in that position, the Bankruptcy Court found that Rushmore intentionally created this hole in its written policy to "maintain a veil of ignorance" of its borrowers' bankruptcies, even though there was no evidence that Rushmore had ever previously encountered this unusual situation. *Id.* at 57:11-58:6; Ex. H, Remand Ruling at 13-14.[2]

After trial, the Bankruptcy Court awarded the Debtors $67,007.94 in attorney fees and costs. Ex. X, BAP Op. on Trial Fees at 3-5. The award included all of the time counsel spent on the litigation through trial at his "rack rate." *Id.* The fee award neither distinguished between services performed for Adnette versus Willie, nor between the stay claims and the failed discharge claims. *Id.* at 15-16. In the same fashion, the Bankruptcy Court awarded $3,500 in fees incurred pursuing trial-level attorney fees. Ex. DD, BAP Op. on Supp. Fees at 4-5.

The parties appealed and cross-appealed all of the rulings to the Ninth Circuit

---

[2] Rushmore has since corrected this hole and has expanded acceptable sources of notice of bankruptcy filing to non-borrowers.

RUSHMORE'S OPENING BRIEF

BAP, except the $742.10 actual damages incurred litigating the stay violation. Ex. H, Remand Ruling at 4:8-16. The appeals were not consolidated, and so resulted in multiple opinions, summarized as follows:

**BAP Opinion on Merits** [Ex. P]

- The Bankruptcy Court erred by awarding damages to Willie. *Id.* at 13-16. Rushmore violated only *Adnette*'s stay by trying to collect *Adnette*'s debt secured by *Adnette*'s residence. *Id.* Willie's stay was not violated, and he lacked standing to bring a claim for injuries arising from a violation of Adnette's stay. *Id.*

- The Bankruptcy Court properly denied relief to the Debtors on their discharge claims because they failed to prove by clear and convincing evidence when Rushmore received notice of the discharge. *Id.* at 27-28.

- The Bankruptcy Court properly refused to award relief under § 362(k) on account of Rushmore's collection activities after the stay ended. *Id.* at 29.

- The Bankruptcy Court did not err in finding "appropriate circumstances" for a punitive damages award, but the amount was remanded because the corpus of the damages (Willie's $100,000 emotional distress award) was reversed. *Id.* at 18-23. The BAP also mentioned that the award of attorney fees could be considered in determining the punitive damages amount. *Id.* at 23.

**BAP Opinion on Trial Fees** [Ex. X]

- The Bankruptcy Court erred by not providing a clear and concise explanation of why it apparently awarded fees for time relating to the discharge claims. *Id.* at 15. The Bankruptcy Court should also reconsider the award "because we have reversed the award of damages to Willie and remanded the punitive damages award for the bankruptcy court to review in light of [that] decision." *Id.* at 16.

**BAP Opinion on Supplemental Fees** [Ex. DD]

- Same as BAP Opinion on Trial Fees. The opinion expressly characterizes

the discharge claims as "failed." *Id.* at 4.

**BAP Opinion on Adversary Fees** [Ex. II]

- The Bankruptcy Court should have considered what portion of counsel's time litigating the adversary proceeding should be recoverable to Adnette under § 362(k). *Id.* at 12, 14.

The BAP also remanded the Debtors' motions for appellate attorney fees in light of the outcomes of the appeals and the other fees awarded on remand. Ex. H, Remand Ruling at 6:18-22.

The parties appealed to the Ninth Circuit. *Id.* at 5:16-6:3. But the Ninth Circuit ruled the matter was not ripe for further appellate review. *Id.*

On remand, the Bankruptcy Court recognized that Adnette's award of $742.10 was the only surviving economic damages. *Id.* at 19:6-7. Nevertheless, it increased the original $200,000 punitive damages award to $500,000. *Id.* at 20.

The following chart summarizes the current procedural posture of the claims brought by the Debtors in their Contempt Motion.

| Claimant | Factual Predicate | Legal Predicate | Disposition at Trial | Disposition at BAP | Disposition on Remand |
|---|---|---|---|---|---|
| Adnette | Collection Activity Apr. 2014 – Sept. 2016 | Stay violation | Economic damages: $742.10 | <u>Not</u> <u>appealed</u> | |
| | | | <u>Collective</u> punitive damages: $200,000 | <u>Remanded</u> | Increased to: $500,000 |
| Adnette | Collection Activity Sept. 2016 – Oct. 2018 | - Discharge injunction violation<br>- "Continuing" stay violation | No award | Affirmed | |
| Willie | Collection Activity Apr. 2014 – Sept. 2016 | Stay violation | Emotional distress damages: $100,000 | <u>Reversed</u> | |
| | | | <u>Collective</u> punitive damages: $200,000 | <u>Reversed</u> | |
| Willie | Collection Activity Sept. 2016 – Oct. 2018 | - Discharge injunction violation<br>- "Continuing" stay violation | No award | <u>Affirmed</u> | |

On remand, the Bankruptcy Court awarded virtually all the Debtors' requested attorney fees and costs for trial, the adversary proceeding, and on appeal to the BAP, for a total of $200,986.71. The court did not distinguish between fees incurred for services for Adnette versus Willie, and inexplicably concluded that the Debtors prevailed on appeal on all matters except their discharge claims.

## SUMMARY OF ARGUMENT

On remand from the BAP, instead of reducing the punitive damages and attorney fee awards in recognition that only $742.10 in damages survived the appeal, the court increased the punitive damages from $200,000 to $500,000. That component of the Remand Ruling should be reversed because it violates Rushmore's due process rights. The Bankruptcy Court used Adnette's punitive damages award to punish Rushmore for its successful appeal and to punish Rushmore for Willie's noncompensable injuries. Indeed, the Bankruptcy Court impermissibly justified the substantial expansion of punitive damages based on its view that Rushmore's conduct toward Adnette was more reprehensible *because* Willie had no remedy. Similarly, the court erred by determining that a greater deterrent was needed given that the *Willie*'s of the world could not sue. That improperly seeks to remedy Congress's (perceived) error in not giving the *Willie*'s of the world standing. Moreover, a need for deterrence cannot expand the constitutional limits on punitive damages.

In contrast to the Bankruptcy Court's staggering award of $500,000 (674 times Adnette's actual damages), the Constitution does not allow for a large punitive damages award here. Yes, the relevant conduct—31 collection notices and 68 calls trying to reach Adnette—violated Adnette's stay. That conduct was wrong, and Rushmore does not contend otherwise. But it pales in comparison to the type of conduct that usually justifies punitive damages awards—in similar stay violation contexts, formal dispossessory or foreclosure proceedings—or in other contexts, threats of violence, putting an alcoholic in charge of a massive oil tanker, or intentional racial discrimination. Against this backdrop, the conduct here, which threatened no

serious physical or economic injury, is not particularly egregious. Reprensibility is also diminished by Adnette's failure to properly notify Rushmore of her bankruptcy and waiting over half a decade to pursue a remedy, each of which materially contributed to the problem. Adnette also suffered no compensable harm apart from the expense of suing Rushmore. Indeed, her $742.10 in actual damages and any attorney fees ultimately awarded are a result of the litigation that she began after Rushmore had stopped servicing her loan. The award of $742.10, and the statutory fees which the BAP already characterized as deterrence, not compensation, are not properly considered "harm" to Adnette, and so cannot be used to justify the punitive award as meeting the constitutional requirements. Moreover, punitive damages awards in other more egregious stay violation cases have ranged between $3,500 and $20,000 and comparable statutory penalties are even smaller. Thus, the Bankruptcy Court's award far exceeds the limits of due process and reflects an abuse of discretion.

This Court should reverse the attorney fee awards because Debtors' counsel failed to act as a gatekeeper to prevent Adnette's unnecessary § 362(k) claim from turning $0 dollars of stay-related harm into years of expensive litigation. This Court should also reverse the fees awarded for unsuccessfully pursuing Willie's emotional distress claim at trial and on appeal. And the Court should reverse any trial fees related to the discharge claims, which failed. Any fees for pursuing fee awards should suffer the same fate as the fee awards on the underlying claims.

Rushmore accordingly requests that the District Court: (A) reverse the $500,000 punitive damages award because it violates due process, and determine the maximum allowable amount, if any, that can be awarded against Rushmore; (B) reverse the $500,000 punitive damages award because the Bankruptcy Court abused its discretion by basing its punitive damages award on incorrect conclusions of law; (C) reverse the attorney fee awards; and (D) to the extent that remand on any issue is required, withdraw the reference to address the remand directly.

**ARGUMENT**

**PART I.     Punitive Damages**

    **A.     Legal Standard**

        **1.  *Overview of § 362(k)***

Adnette's award on remand was premised only on § 362(k), which provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k).  To prevail, there must be a "showing (1) by an individual debtor of (2) injury from (3) a willful (4) violation of the stay." *Fernandez v. G.E. Cap. Mortg. Servs. (In re Fernandez)*, 227 B.R. 174, 180 (9th Cir. BAP 1998).  The court may award punitive damages under § 362(k) if an additional fifth element—appropriate circumstances—is met. "Appropriate circumstances" requires more than just the violation of the stay being willful, it requires additional proof of a "reckless or callous disregard for the law or rights of others."  *In re Snowden*, 769 F.3d at 657.

        **2.  *Prerequisites for an Award of Punitive Damages Under § 362(k)***

Though the Bankruptcy Court did not to identify any standard guiding its discretion in awarding punitive damages, that omission is not the basis of Rushmore's appeal.  Rushmore challenges the award because the court's exercise of discretion rested on erroneous legal conclusions, any of which is a *per se* abuse of discretion. *See Hinkson*, 585 F.3d at 1261 (quoting *Cooter & Gell*, 496 U.S. at 405) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law . . . .")).  Rushmore also challenges the award on the grounds that it abridged Rushmore's due process rights.

        **3.  *Constitutional Limitations on Punitive Damages – The BMW Test***

The constitutional due process analysis of punitive damage awards, first set out in *BMW of North America v. Gore*, 517 U.S. 559 (1996), provides three guideposts: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity

between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 412 (2003). "[A]ppellate courts [must] conduct *de novo* review of a trial court's application" of these guideposts." *Id.* at 418. "Exacting appellate review ensures that an award of punitive damages is based upon an "'application of law, rather than a decisionmaker's caprice.'" *Id*.

> i.   *BMW Guidepost #1: Reprehensibility*

The reprehensibility analysis is the measure of "the enormity of [the] offense," against the plaintiff. *BMW*, 517 U.S. at 575. Indeed, "reprehensibility [is] the most important indicium of a punitive damages award's reasonableness." *Id.* at 412. "[T]he conduct that harmed [the plaintiffs] is the only conduct relevant to the reprehensibility analysis." *State Farm*, 538 U.S. at 422-23.

The Ninth Circuit uses the five sub-factors set out by the Supreme Court in *State Farm* to measure reprehensibility: "(1) the type of harm, (2) whether there was reckless disregard for health and safety of others, (3) whether there were financially vulnerable targets, (4) whether there was repeated misconduct, and (5) whether it involved intentional malice, trickery, or deceit, rather than mere accident." *Exxon Valdez v. Exxon Mobile Corp. (In re Exxon Valdez)*, 490 F.3d 1066, 1084 (9th Cir. 2007) (*reversed on other grounds*, 554 U.S. 471 (2008)). The application of these factors is reviewed *de novo*. *Planned Parenthood*, 422 F.3d at 958. "[O]nly one factor weighing in a plaintiff's favor may not be sufficient to support a punitive damages award, and the absence of all factors makes any such award 'suspect.'" *Exxon*, 490 F.3d at 1081.

> a.   Type of Harm

In evaluating the type of harm, the Court must determine whether "'the harm was physical as opposed to economic,' because conduct producing physical harm is more reprehensible." *Id.* at 1085 (quoting *State Farm*). Intentional infliction of

emotional distress can be "more reprehensible than conduct causing mere economic harm." *Id.* (citing cases of "mental torture," "intentional, repeated ethnic harassment," and "'mental fear, torture, and agony of mind' caused by the threat of violence"). In contrast, "punitive damages [are not appropriate] for accidentally causing mental distress." *Id.* Indeed, "compensatory damages for mental distress generally include a punitive element, so including mental distress in punitive damages may be duplicative." *Id.*

b. <u>Disregard for Health and Safety of Others</u>

The second factor, whether there was reckless disregard for health and safety of others, looks past the injuries actually inflicted to determine whether the conduct is of the type that naturally produces harm (example: firing a gun randomly into a crowded room may produce a minor injury, but shows a reprehensible disregard for the health and safety of others). *See TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 460 (1993). The sole use of extrinsic evidence of injuries to third parties is to demonstrate, by examining the number of persons actually injured and the severity of their injuries, that the conduct in question is more or less reprehensible due to the likelihood (or unlikelihood) of the conduct causing widespread and/or severe injury. *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007) ("Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible …."). But the factfinder must be careful to "not go further than this and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties," *id.*, "under the guise of the reprehensibility analysis." *State Farm*, 538 U.S. at 423; *see also Conboy v. Wynn Las Vegas, LLC*, 2013 U.S. Dist. LEXIS 55558, at **33-34 n.11 (D. Nev. Apr. 18, 2013) (consideration of third-party injuries limited to evaluating risk of harm).

c. <u>Financially Vulnerable Targets</u>

The third factor is whether there were financially vulnerable targets. This factor

does not turn on whether Adnette happened to be financially vulnerable, but rather whether the conduct is more reprehensible because there was an "intentional aiming or targeting of the vulnerable." *Exxon*, 490 F.3d at 1087 ("The notion of 'targeting' connotes some element of intent to harm particular individuals or categories of individuals.").

### d. Repetition of Conduct

The fourth factor, whether there was repeated misconduct, looks both at repetitive conduct in the case at bar, *e.g.*, *id.* at 1088, and similar historical acts in other cases (*i.e.*, "recidivism"), *e.g.*, *Planned Parenthood*, 422 F.3d at 959.

### e. Intentionality of Harm

The fifth factor—whether the conduct involved intentional malice, trickery, or deceit, rather than mere accident—is a high bar. This subfactor militates against viewing the misconduct as highly reprehensible in the absence of a specific intent to *harm* (*i.e.*, not an intent to act), even if the harm was a highly foreseeable risk of an intentional act. *Exxon*, 490 F.3d at 1088.

### ii. *BMW Guidepost #2: Actual Harm*

The second guidepost, the disparity between the plaintiff's harm and the punitive damages award, evaluates the "ratio between harm, or potential harm, to the plaintiff and the punitive damages award." *State Farm*, 538 U.S. at 424. "[T]he ratio between compensatory and punitive damages is . . . a central feature in [the] due process analysis." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 507 (2008). The purpose of this review is to "ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Exxon*, 490 F.3d at 1089. The Ninth Circuit generally follows the *Planned Parenthood* framework:

> [I]n cases where there are 'significant economic damages' but behavior is not 'particularly egregious,' a ratio of up to 4 to 1 'serves as a good proxy for the limits of constitutionality.' In cases with significant economic damages and 'more egregious

> behavior,' however, a single-digit ratio higher than 4 to 1 'might be constitutional.' [And] in cases where there are 'insignificant' economic damages and the behavior is 'particularly egregious,' … 'the single-digit ratio may not be a good proxy for constitutionality.'

*Exxon*, 490 F.3d at 1094.

> [The Ninth Circuit's] cases have generally reserved high single-digit ratios for the most egregious forms of intentional misconduct, such as threats of violence and intentional racial discrimination. *See Zhang*, 339 F.3d at 1044 (upholding a ratio of 7:1 for intentional racism); *Bains*, 405 F.3d at 776-77 (remanding for district court to set a ratio between 6:1 and 9:1 for intentional racism); *Planned Parenthood*, 422 F.3d at 952, 963 (9:1 ratio for threats of violence).

*Id.* at 1093.  "[T]he ratio must be measured by the ratio of punitive damages to the harm suffered by the plaintiff in that case, without regard to harm that might have been experienced by others and for which the defendant might also be responsible." *Id.* at 1077.

   iii. *BMW Guidepost #3: Comparison to Statutory Penalties and Comparable Cases*

   The third and final guidepost, the difference between the punitive damages awarded by the factfinder and the penalties authorized or imposed in comparable cases, helps prevent disparate punishments for similar conduct and punitive damages awards that exceed what was reasonably foreseeable based on past punitive damages awards and statutory penalties.  *BMW*, 517 U.S. at 584 (third factor defers to legislative branch and ensures defendants have "fair notice").

   **4.** **Constitutional Limitations on Awarding Punitive Damages Based Upon Harm to Third Parties**

   Due process clearly forbids the use of "a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties." *Philip Morris*, 549 U.S. at 355.  This does not create a categorical ban against considering what has happened to third parties; such evidence may sometimes be

permissibly considered when evaluating reprehensibility, as explained above.  But "due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis." *State Farm*, 538 U.S. at 423.

Relatedly, it offends due process to punish a defendant on account of a third party's injuries if the defendant has a valid defense against the third party.  *Philip Morris*, 549 U.S. at 353-54; *see also State Farm*, 538 U.S. at 422 (factfinder "may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred").

### B.   Application of the Law to the Punitive Damages Award

The Bankruptcy Court erred in applying these standards as explained below.

#### 1.   *Summary of the Bankruptcy Court's Original Ruling Incorporated into the Remand Ruling*

The court apparently took up the first *BMW* factor (reprehensibility) together with its threshold "appropriate circumstances" finding.  The court concluded that Rushmore intentionally created a "veil of ignorance" with respect to information about a borrower bankruptcy because Rushmore's written policies did not specifically address what to do with information learned from an unauthorized individual and, in practice, Rushmore's representatives verified such information by speaking with the borrower instead of running a PACER search.  Ex. N, Original Ruling 40:8-15, 41:5-6 n.51, 57:14-58:6.  The court's conclusion was also informed by these observations:

- Rushmore "made sixty-eight telephone calls to the Debtors' residence, mailed thirty Account Information and Mortgage Statements and other correspondence to the Debtors' residence, and . . . physically posted on the door of the Residence a notice advising the Debtors to call Rushmore's collection department" in violation of Adnette stay.  Ex. H, Remand Ruling at 2.

- On the call where Willie informed Rushmore of the stay, Rushmore's

17

account representative did not tell Willie that Willie was an unauthorized third party or that there was a "problem" with the information Willie provided. Ex. N, Original Ruling at 57:4-10.

- The account representative notated the information in Adnette's file, but Rushmore failed to follow up on that indication that Adnette was in bankruptcy. *Id*. at 55:22-26.

- This conduct did not expressly violate Rushmore's stated policy that it "will act promptly in response to notice of any nature, whether written or oral (telephonic or in person), that a borrower has filed for bankruptcy protection." Ex. H, Remand Ruling at 13:14-17 (quoting policy).

- Rushmore's servicing policies otherwise recognize the importance of the stay and that a notice of the stay can come from third party sources. Ex. N, Original Ruling at 57:15-17.

- The "unwritten" policy "apparently" applies to all consumer residential mortgage loan borrowers. *Id*. at 57 n.67, 58:4-6.

The Bankruptcy Court recognized that Rushmore's conduct was less reprehensible than initiating or concluding formal foreclosure proceedings. *Id*. at 58:15-20 (citing for comparison *America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1099 (9th Cir. 2015) ($20,000 punitive damages award after foreclosure proceedings based upon false information), and *Sundquist v. Bank of America, N.A.*, 566 B.R. 563, 611-12 (Bankr. E.D. Cal. 2017) (punitive damages awarded against lender that foreclosed despite receiving proper notice, filed a lawsuit to dispossess debtors, harassed debtors' minor child, tailed debtors' cars, gave notices that panicked debtors into moving out of property, knowingly failed to provide corrective notice, and executives lied to a government agency about case). Because of this comparison, the court did "not apply a large multiplier" based on reprehensibility. *Id*. at 58:15-20. Yet, the court found that "this is not a situation involving a rogue employee, but the acts of representatives that Rushmore touts as

properly trained," and so applied "a modest multiplier to deter this loan servicer's future conduct." *Id*. at 59:2-7.

Related to *BMW*'s third guidepost, comparison to other cases, the court examined punitive damages awards in three comparable cases:

| **Comparable Case** | **Facts** | **Award** |
|---|---|---|
| ***Page Ventures***, *LLC v. Ventura-Linenko (In re Ventura-Linenko)*, 2011 U.S. Dist. LEXIS 40299, at *29 (D. Nev. Apr. 1, 2011) | Creditor served the debtor with a five-day notice to quit and an order for a hearing on the foreclosure. | $3,500 in emotional distress damages<br><br>$3,500 in punitive damages<br><br>$350 in attorney's fees<br><br>Punitive/actual damages ratio of 1:1 |
| ***In re Trueman***, 2015 Bankr. LEXIS 4573, at *4 (Bankr. D. Nev. Feb. 12, 2015) | Creditor, against advice of counsel, evicted debtor from home after reaching an agreement through counsel not to, forcibly dispossessed the debtor and family (including minor children), and refused access to belongings for weeks. | $25,000 in emotional distress damages<br><br>$15,000 in punitive damages<br><br>Punitive/actual damages ratio of .60:1 |
| ***Schwartz-Tallard***, 803 F.3d 1095, *supra* | Servicer obtained stay relief based on lie to court and began foreclosure; servicer admitted to debtor that foreclosure proceedings were based on lie; on proper notice to servicer, bankruptcy court reinstated stay; *then* servicer foreclosed; debtor came to "a notice posted on the garage indicating that the home had been sold and that they would be evicted in three days." | $40,000 in emotional distress damages<br><br>$20,000 in punitive damages<br><br>$20,000 in attorney's fees<br><br>Punitive/actual damages ratio of .50:1 |

### 2. *Analysis of the Bankruptcy Court's Remand Ruling*

The Ninth Circuit BAP ruled that Willie had shown no violation of his stay and had no remedy under § 362(k) for the violation of Adnette's stay, so it reversed Willie's $100,000 emotional distress award. That diminished the Debtors' $100,742.10 trial award by ***over 99%***. Even though the conduct at issue had not changed and there was now essentially no legally compensable harm to remediate, the Bankruptcy Court did not reduce the original punitive damages award of $200,000 by a commensurate amount. On the contrary, the court on remand more than doubled it to $500,000.

The result is an eye-popping multiplier of 674:1 when compared to Adnette's remaining award of $742.10. Only by improperly including attorney fees and costs for the contempt hearing ($67,007.94), and fees incurred requesting those fees ($3,500.00), was the Bankruptcy Court able to frame the increased award as reflecting a 7:1 multiplier. Even so, the Ninth Circuit reserves such multipliers for "the most egregious forms of intentional misconduct, such as threats of violence and intentional racial discrimination." *Exxon*, 490 F.3d at 1093.

At its core, the Bankruptcy Court violated Rushmore's due process rights on remand by using Adnette's punitive damages award to punish Rushmore (i) on account of Willie's noncompensable injuries, (ii) for appealing the Original Order, and (iii) for calling the Debtors' failed discharge claim unsuccessful.

i.  *The Bankruptcy Court Punished Rushmore for Willie's Noncompensable Injuries*

The Bankruptcy Court did not accept the plain implications of the BAP's ruling the Willie had no standing, characterizing the ruling as having bad "unintended consequence[s]." Ex. H, Remand Ruling at 16:10-11. And to avoid those consequences, the Bankruptcy Court doubled down in punishing Rushmore for Willie's injuries, accomplishing indirectly (through a vastly larger award to Adnette than the award originally given to Adnette *and* Willie) what it could no longer do for

Willie directly.

The Bankruptcy Court sought to justify its impermissible consideration of Willie's injuries by saying that Rushmore's conduct was *more* reprehensible in light of the BAP's ruling.  But the court took no new evidence and identified no fact or legal consideration that was overlooked in its Original Ruling.  The court entirely failed to justify how Rushmore's conduct toward *Adnette*—which was no different than when the Original Ruling was penned—is *more* reprehensible simply because Congress ***did*** ***not*** give Willie standing to pursue injuries from that conduct.  The court's drastic change in its view of reprehensibility was admittedly occasioned by the "***BAP's conclusion*** that the borrower's spouse, Willie Moon, was not protected by the automatic stay."  *Id*. at 16:2-4 (emphasis added).  And the court failed to relate this consideration to the *State Farm* reprehensibility factors.  In contrast, the Bankruptcy Court should have recognized that the BAP's elimination of 99% of the damages indicates that Rushmore's conduct was *less* reprehensible under the first *State Farm* factor—the severity and nature of plaintiff's actual harm (as Willie was no longer a plaintiff), and that a smaller award is further required by the second *BMW* factor—the disparity between the plaintiff's harm and the punitive damages.

There is no question that the Bankruptcy Court was, in fact, punishing Rushmore for Willie's injuries.  The court insisted that Rushmore's "persistent phone calls [to Willie] . . . despite having knowledge of his [Willie's] bankruptcy status ***should be troubling***."  *Id*. at n.30 (emphasis supplied).  But if Willie's stay was not violated by the calls, why is it "troubling" that Rushmore's calls were made with knowledge of Willie's stay?

And why is "the egregiousness of Rushmore's unwritten policy [made] far worse" by the fact that it "deprive[ed] Willie Moon of the solace expected from filing for bankruptcy protection"?  *Id*. at 16:12-16; *see also id*. at 17:4-6 ("Rushmore continued to contact Willie Moon at his residence in spite of having knowledge that he was in a Chapter 13 proceeding. Willie Moon had no reason to know that his

communications with Rushmore would never end the phone calls or other collection activity received at the residence."). If Willie Moon's stay was not violated, how then was "Willie Moon [deprived] of the solace expected from filing for bankruptcy protection"?

And if the BAP reversed Willie's award, why did the Bankruptcy Court devote such a great deal of space in the Remand Ruling reflecting its disdain for Rushmore's conduct toward Willie, characterizing it as "cruel"? *Id*. at 18 n.30. There is no question that the court was concerned with the outcome on appeal. *See id*. at 18 n.29.

But it was wrong for the Bankruptcy Court to punish Rushmore for Willie's legally noncompensable injury "under the guise of the reprehensibility analysis." *See State Farm*, 538 U.S. at 423. "[T]he conduct that harmed [Adnette] is the only conduct relevant to the reprehensibility analysis." *Id*. "[Rushmore] should be punished for the conduct that harmed [Adnette], not for being an unsavory individual or business." *Id*. Rushmore cannot be punished indirectly for Willie's injury through a punitive damages award, where Willie could not sustain a claim directly. *See Philip Morris*, 549 U.S. at 353-54 ("the Due Process Clause prohibits . . . punishing an individual without first providing that individual with 'an opportunity to present every available defense.'").

ii.   *The Bankruptcy Court Punished Rushmore for Its Successful Appeal and Good Faith Defenses*

The Bankruptcy Court punished Rushmore for its successful appeal. In its effort to justify the new $500,000 punitive damages award (and the stated 7:1 multiplier it reflected), the court noted that seven years elapsed between Rushmore receiving notice of Adnette's bankruptcy and the remand hearing. The court stated:

> As of the hearing on the various remanded matters (January 13, 2022), over seven years have elapsed since Rushmore commenced (December 20, 2014) its willful violation of the automatic stay protecting Adnette Moon. At the time of the evidentiary hearing on the Sanctions Motion (September 16,

> 2019), Adnette Moon was 72 years old and Willie Moon was 74 years old.  Both have a variety of significant health issues. . . . Even though punitive damage multipliers are not required to be single-digit and far greater numerical ratios have been permitted, the court concludes that seven is the appropriate multiplier to apply at this stage to deter Rushmore from continuing to violate the automatic stay.

Ex. H, Remand Ruling at n.35.

There is no legal basis for punishing Rushmore for the lapse of seven years. The Debtors waited four of those years to hire an attorney to pursue the claims. Three of the seven years relate to the period after the Debtors began their litigation (from January 18, 2019 forward), and of those, six months is attributable to the timing of the Bankruptcy Court issuing the Original Ruling after trial, and two years reflect the period while the order was on appeal and remand.  The Remand Ruling does not explain why Rushmore should be responsible for the Debtors' delay in bringing this litigation (which is when Rushmore first received any bankruptcy filings), why Rushmore is responsible for the length of the litigation, or why Rushmore should be punished for its largely successful appeal.

In further evidence that the Bankruptcy Court punished Rushmore for its good faith appeal, the court's footnote contends that: "Even though Rushmore does not contest that it willfully violated the automatic stay, it continues to deny culpability for its unwritten, undisclosed policy by which it denies receipt of notice of bankruptcy cases." *Id.*  Yet, the court acknowledges that: "Rushmore does not contest that it willfully violated the automatic stay." *Id.*  The "den[ial] [of] culpability" for which Rushmore was punished was nothing more than Rushmore seeking to reduce or eliminate the punitive damages award on appeal. *Id.* (referencing Rushmore's argument on appeal that punitive damages were not necessary to effect deterrence). In similar fashion, the Bankruptcy Court rebuffed Rushmore's arguments on mitigation as reflecting "unmitigated gall." *Id.* at 20 n.32.  And the court warned, should Rushmore's continued defense give it "reason to believe [$500,000] is

insufficient to deter Rushmore from continuing such conduct," it could increase the punitive damages award to $1.4 million.  Ex. H, Remand Ruling at 29:23-30:2.

Punitive damages cannot be awarded out of judicial disagreement with a litigant's good faith defense.

iii.   *The Bankruptcy Court Punished Rushmore for Calling the Debtors' Failed Discharge Claim Unsuccessful*

Rushmore was also impermissibly punished because:

> Rushmore has repeatedly mischaracterized the court's conclusion as a finding that it did not violate the Debtors' discharge.  *See, e.g.*, Rushmore Opposition to Second Fee Motion at 2:20-22.  At the hearing on remand, Rushmore continued to mischaracterize the court's conclusion and counsel was admonished not to do so.  An award of punitive damages may take into consideration that the litigant defends its position "with great stubbornness" to discourage parties from pursuing meritorious claims as a cost of doing business. *See, e.g., Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672, 677-78 (7th Cir. 2003) (affirming punitive damages award under 37.2 to 1 multiplier).

*Id*. at 10 n.21.

The comment that drew the Bankruptcy Court's ire at the hearing was the assertion that the Debtors did not "prevail" on the discharge claims.[3]  In contrast, the Bankruptcy Court maintained the Debtors had "succeeded" on those claims.  *Id*. ("Debtors presented the evidence to establish both the automatic stay violations and the discharge violations.  Debtors succeeded in doing both.").  "Any assertion that the Debtors did not succeed in proving that Rushmore violated the discharge injunction" was characterized by the court as "delusional."  *Id*.  The court insisted "that there was a discharge [] violation."   Ex. L, Tr. of Jan. 13, 2022 Hrg. at 20:22-24. "It simply couldn't come up with a way to award damages because there was no sufficient

---

[3]  Ex. L, Tr. of Jan. 13, 2022 Hrg. at 19:19-21 ("And when the smoke cleared, only one of those debtors still had any claims, and she only prevailed on one of the claims."); 20:6-22:10 (resulting colloquy with counsel).

evidence of when Rushmore got noticed." *Id.*

But the Debtors made that precise argument in the appeal to the BAP;[4] and the BAP rejected it, remanding the fee awards because "the bankruptcy court did not explain why it awarded attorney's fees under § 362(k) for what appeared to be time spent on the Moon's **failed** discharge injunction violation claim[s]." Ex. DD, BAP Op. on Supp. Fees at 4 (emphasis added).

And the BAP's characterization of the claims as "failed" is indisputable. The Bankruptcy Court found that "the most that can be said is that Rushmore was informed of the Debtors' discharge at some point" during the period beginning with "the entry of the Discharge Order . . . and [ending with] Rushmore's cessation of loan servicing." Ex. N, Original Ruling at 45:4-6 *accord* Ex. H, Remand Ruling at 10 & 27 n.47. If the date of notice could have coincided with "Rushmore's cessation of loan servicing," how did the Debtors prove by clear and convincing evidence that Rushmore took *any* action *after* that notice? *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) ("principles of basic fairness require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt" (quotations, alterations omitted)).

And the discharge claims further failed because ***the discharge order was not even enforceable against Rushmore***, as the Debtors failed to give Rushmore the constitutionally required prior notice of the underlying proceeding. *See* Ex. N, Original Ruling at 43:10-16 & n.55 (no prior notice of discharge proceedings was given); *see also Moon v. Rushmore Loan Mgmt. Servs., LLC (In re Moon)*, 2021 Bankr. LEXIS 299, at **12-13 (B.A.P. 9th Cir. Feb. 4, 2021) (holding that plan confirmation order was unenforceable and could not support contempt claim because Debtors failed to provide Rushmore prior notice as required by due process).

Thus, the Bankruptcy Court made a clear error of law and violated Rushmore's

---

[4] Ex. RR, Debtors' Second Brief in BAP No. 20-1144 at 13; *see also* Ex. SS, Debtors' Opening Brief in BAP No. 20-1195 at 17.

due process rights by awarding punitive damages based on its incorrect view that the Debtors had successfully proven their discharge claims and Rushmore was being stubbornly litigious, indeed "delusional," in saying otherwise.

iv.   *The Bankruptcy Court Erroneously Justified its Award on Deterrence*

The Bankruptcy Court erroneously sought to justify the $500,000 award with the need for deterrence.  Ex. H, Remand Ruling at 21 n.35 ("[S]even is the appropriate multiplier to apply at this stage to deter Rushmore from continuing to violate the automatic stay.").

The Bankruptcy Court's misplaced concern was that because nonborrowers, like Willie, have no standing to assert damages under the borrower's automatic stay, there is a "new" risk that servicers will, in joint marital bankruptcy cases, continue to "dun[] the nonborrower debtor" without repercussion.  *Id.* at 18:4-6; *see also id.* at 19:3-6 ("Because Rushmore now is permitted, however, to contact joint bankruptcy debtors who are not co-borrowers or co-owners of residential property without violating the automatic stay, a deterrent is essential to prevent Rushmore from employing the same or similar unwritten, undisclosed policy to frustrate the protections of the automatic stay.").

The first error in this reasoning is that it rests on a misconstruction of the BAP's ruling: Rushmore's contact with Willie *did* violate *Adnette*'s automatic stay. The second error is the implicit conclusion that *Willie* suffered a wrong that should have been prevented by *Willie*'s stay.  But the Bankruptcy Code protects a debtor (like Willie) against the collection of his or her debts—it is not a universal right to be free from annoyance related to the debts of others.  If Congress views the standing under § 362(k) as too narrow, it can fix it.  But it is not the Bankruptcy Court's place to treat it as a defect to be remedied.

In further error, the Bankruptcy Court's concerns about deterrence rested on the unsupported assumption that Rushmore was already or would soon become a repeat

offender in this area.  *See id.*  But the court pointed to no evidence that this situation had ever arisen before, let alone after, the entry of the Original Order.  *See BMW*, 517 U.S. at 579, 584-85 (noting "that there is no evidence that BMW persisted in a course of conduct after it had been adjudged unlawful on even one occasion, let alone repeated occasions" and concluding that "***[i]n the absence of a history of noncompliance*** . . . , ***there is no basis for assuming that a more modest sanction would not have been sufficient to motivate full compliance*** . . . ." (emphasis added)).  Moreover, the court failed to acknowledge this case arose on highly unusual facts: (1) the Debtors failed to give the legally required bankruptcy notice to Rushmore, (2) Rushmore's ACCER tool (which automatically searches PACER) failed to pick up the bankruptcy filing, and (3) the borrower did not pick up her home phone, it was answered by a nonborrower who informed Rushmore of the borrower's bankruptcy.

Finally, even if the Bankruptcy Court was correct about the need for deterrence, that conclusion does not expand the constitutional limit on punitive damages.  *Leatherman Tool Grp. v. Cooper Indus.*, 285 F.3d 1146, 1152 (9th Cir. 2002) ("[W]e acknowledge that the evidence would support a finding that a substantial punitive award might be necessary to have a sufficient economic effect on Cooper to create deterrence.  On the basis of the record as a whole, however, and in view of the *Gore* factors, we cannot conclude that this consideration renders the amount awarded by the jury constitutional."); *see also Bains LLC v. ARCO Prods. Co.*, 405 F.3d 764, 777 (9th Cir. 2005) (deterrence considerations, such as wealth, "cannot make up for the failure of other factors, such as "reprehensibility," to constrain significantly an award that purports to punish a defendant's conduct").  There are two intertwined reasons that deterrence does not inform the constitutional limits of punitive damages awards: (1) due process has a procedural component—the amount of the award must be foreseeable; and (2) punitive damages are *punishment* for a wrong and the punishment must be proportionate to the wrong.  *State Farm*, 538 U.S. at 416 ("The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or

arbitrary punishments on a tortfeasor. . . . [E]lementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.").

As shown below, the Constitution permits minimal, if any, punitive damages here.

### C.   Due Process Permits Minimal Punitive Damages Here, If Any

Having reviewed the Bankruptcy Court's errors, we now turn to this Court's *de novo* application of the *BMW* guideposts.

#### 1.   *BMW Guidepost #1 – Reprehensibility*

Rushmore's conduct falls within the lower end of the spectrum of reprehensibility. Applying the *State Farm* factors in order:

**One:**     Adnette suffered no meaningful harm from Rushmore's conduct. While Adnette was perhaps inconvenienced and annoyed by Rushmore's conduct, the Bankruptcy Court concluded that she did not even suffer cognizable emotional distress damages, let alone actual physical injury. And when Adnette chose to sue Rushmore on account of the conduct, she did so years after her bankruptcy stay had terminated and after Rushmore was no longer servicing her loan.

**Two:**     Directing 99 collection notices and calls over nearly two years to a borrower about a debt does not reflect a reckless disregard for the health and safety of others.  The collection activities were routine and industry norm aside from the fact they violated the stay.  Indeed, the call recording quoted in the Original Ruling (pages 56-57) reflects a professional and courteous tone by Rushmore's representatives; and Willie only contended that one call, which fell outside of the relevant period, was contentious.  *See* Ex. N, Original Ruling at 44-45.

**Three:**      There was no evidence that Adnette was intentionally targeted because of her financial vulnerability; and there was no evidence that Rushmore's policy was developed to target financially vulnerable borrowers.  To the contrary, the conduct resulted from a hole in how Rushmore's policy, which otherwise recognized the importance of any notice of a borrower bankruptcy, was implemented, and the failure of Rushmore's fail-safe procedure that automatically checked PACER dockets for borrower bankruptcy filings.

**Four:**      While the resulting collections activity by Rushmore was repetitive with respect to Adnette, there was no evidence that this unusual confluence of events had ever arisen historically or that Rushmore had acted in the same way towards anyone else.

**Five:**      No evidence was presented that Rushmore acted with a specific intent to injure Adnette.

In addition, Rushmore's conduct would not have occurred if Adnette had complied with her legal obligation to provide Rushmore with proper bankruptcy notice.  Nor would Rushmore's conduct have continued if the Debtors' prior counsel had contacted Rushmore as Willie promised.  While this does not excuse Rushmore for violating the stay, by any fair and objective measure these facts do diminish the "reprehensibility" of Rushmore's conduct.  *Payne v. Jones*, 711 F.3d 85, 101 (2d Cir. 2012) (provocation mitigates reprehensibility); *Cooper v. Morales*, 535 F. App'x 425, 433 (5th Cir. 2013) (reprehensibility diminished where plaintiff role in precipitating conduct); *Laymon v. Lobby House, Inc.*, 613 F. Supp. 2d 504, 513 (D. Del. 2009) (same); *cf. White v. Ford Motor Co.*, 500 F.3d 963, 975 (9th Cir. 2007) (state law reprehensibility analysis evaluates failure to mitigate).

On balance, Rushmore respectfully submits that its conduct stands in sharp relief against the "more egregious" conduct contemplated by *BMW*, 517 U.S. at 588, and *State Farm*, 538 U.S. at 425 ("single-digit maximum is appropriate in all but the most exceptional of cases, and 'when compensatory damages are substantial, then a

lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee'").

### 2. *BMW Guidepost #2 – Comparison of Punitive Damages to Harm*

Courts typically compare the punitive damages award to the actual damages. But because actual damages are an imperfect approximation of actual *harm*, courts must also examine the actual harm for any disparities between it and the damages awarded. *State Farm*, 538 U.S. at 426 ("Courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff **and** to the general damages recovered." (emphasis added)); *Orange Blossom Ltd. P'ship v. S. Cal. Sunbelt Developers, Inc. (In re S. Cal. Sunbelt Developers, Inc.)*, 608 F.3d 456, 466 (9th Cir. 2010) ("The due process inquiry compares the punitive damages awarded to the *harm* caused by the wrongful act, not merely to the actual damages awarded.").

Here, the $500,000 in punitive damages awarded to Adnette dwarfs her $742.10 economic damages.  The nature of those damages renders the punitive damages award is even less defensible.  Adnette's $742.10 recovery related solely to her time and cost in bringing the Contempt Motion.  Of course, there are also Adnette's attorney fees for prosecuting her stay claim, the amount of which is also on appeal.  But none of these amounts reflect harm ***inflicted by Rushmore***.  After all, when Adnette brought her § 362(k) claim three years after her bankruptcy discharge, there was no stay in effect, much less an ongoing violation to stop.  Indeed, Rushmore was no longer servicing her loan.  Moreover, Adnette was not seeking to be made whole for any past injuries, as by her own admission she had suffered no cognizable pre-litigation damages.  Ex. N, Original Ruling at 26-27 ("[Adnette] did not participate in any telephone calls with Rushmore after the Petition was filed," and she "did not feel any specific emotional distress or stress" from the stay violation).

Similarly, it was a violation of due process to justify the punitive damages based on the statutory fees awarded.  Those fees do not reflect actual harm to Adnette.  To the contrary, Adnette was never personally liable for them, and had no agreement with

counsel obligating her to pay any fees. Ex. X, BAP Op. on Trial Fees at 8-9. In the prior appeal, Rushmore argued that this precluded any award of fees to Adnette. The BAP disagreed, accepting the Debtors' position that "§ 362(k) is a fee-shifting provision rather than a damages provision" and "serves a deterrent function much like many fee-shifting statutes." *See id*. at 8-9 (quoting *Blixeth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 629 n.3 (9th Cir. 2017) (interpreting *Schwartz-Tallard*) and *Easley*, 910 F.3d at 1291). So, the BAP has already concluded that any fees awarded to Adnette *are part of the punishment* and not part of Adnette's harm.

Courts recognize that any award under § 362(k) is punitive in nature if the litigation was brought after the stay violation had ceased and there is no pre-litigation injury. *In re Frasier*, 613 B.R. 271, 278 (Bankr. W.D. Wis. 2020) (recognizing attorney fees award on account of a ceased stay violation that caused no injury would be "punitive"). And where compensatory damages contain elements that are punitive in nature, their inclusion in the compensatory damages award tends towards a smaller, not greater, punitive damages award. *State Farm*, 538 U.S. at 426 ("The compensatory damages for the injury suffered here, moreover, likely were based on a component which was duplicated in the punitive award. Much of the distress was caused by the outrage and humiliation . . . suffered at the actions of the[] [defendant]; and it is a major role of punitive damages to condemn such conduct. Compensatory damages, however, already contain this punitive element."). Adnette had no compensable harm until she decided to litigate her stay violation claim. Thus, Adnette's damages are all punitive in nature.

For similar reasons, courts have held that punitive damages should not be awarded in the absence of pre-litigation harm or an ongoing stay violation. *See McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165, 166 (B.A.P. 9th Cir. 1995). In *McHenry*, a car lender with knowledge of the stay called the debtor and repossessed the debtor's car in violation of the stay. *Id*. The debtor claimed that the creditor's call aggravated her preexisting illness and sought damages for the violation of the

"fundamental bankruptcy right to be left alone," attorney fees, and punitive damages. *Id.* The Ninth Circuit BAP affirmed the lower court's denial of damages, and its reasoning is instructive here:

> [N]o punitive damages should be awarded in the absence of actual damages, for two reasons:
>
> The first reason is that not every violation of the section 362 automatic stay should result in punishment to the offender. As here, certain section 362 stay violations are technical in nature and need no punishment to deter further violations. Instances involving no actual damages to the entity offended by a violation, are, and will be, rare, and it is not likely creditors will intentionally run the risk of such liability. The automatic stay afforded by section 362 is intended to be a shield protecting debtors and their estates, and should not be used as a sword for their enrichment.
>
> The second basis of our concern is the lack of a measure for punitive damages where no actual damage has been sustained by the offended party. The incurrence of actual damage, a measurable event, serves as a basis for a determination of an appropriate punitive damage award. Where there is no actual damage, such measure does not exist.

*Id.* at 168-69. Courts continue to follow *McHenry*. *See*, *e.g.*, *Richardson v. Select Portfolio Servicing, Inc. (In re Mitchell)*, 2021 Bankr. LEXIS 2090, at *8 (B.A.P. 9th Cir. Aug. 3, 2021); *In re Grand*, 2009 Bankr. LEXIS 743, at *1 (Bankr. D. Haw. Jan. 23, 2009) (no punitives where only damages are fees); *Stinson v. Bi-Rite Rest. Supply Inc. (In re Stinson)*, 295 B.R. 109, 122 (B.A.P. 9th Cir. 2003) ("punitive damages should not be awarded absent actual damages" (citing *McHenry*)) *aff'd in relevant part* 128 Fed. App'x 30 (9th Cir. 2005).

*McHenry*'s second concern—of an untethered award of punitive damages—is fully implicated here, where the Bankruptcy Court has warned, should it have "reason to believe [$500,000] is insufficient to deter Rushmore from continuing such conduct," it may include appellate attorney fees in the multiplier on any future remand, thus increasing the punitive damages award to $1.4 million. Ex. H, Remand Ruling at 29:23-30:2. As *McHenry* explains, this sort of punitive damages award, untethered

32

to any pre-litigation harm, is by nature arbitrary and an abuse of discretion.

Accordingly, Adnette's harm should be viewed as $0, or at most $742.10, and it certainly should not include any attorney's fees awarded. Any fees are part of the punishment on Rushmore; they mitigate *against* further punishment. Based on the foregoing considerations and given that Rushmore's conduct falls on the lower end of the spectrum of reprehensibility, no punitive damages award to Adnette is permissible.

### 3. *BMW Guidepost #3 – Comparison to Comparable Cases and Statutory Penalties*

The Original Ruling compared this case to three comparable cases, as discussed above. In summary, each comparative case involved formal foreclosure and/or dispossessory proceedings. None featured a debtor failing to provide the statutorily required notice. And despite those distinctions, they still only resulted in punitive awards of $3,500, $15,000, and $20,000 (calculated at a ratio of 1:1, .60:1, and .50:1, respectively. Similarly, the penalties available under comparable consumer protection statutes are fairly small. *See* 15 U.S.C § 1692k(a)(2) (FDCPA: regardless of the number of violations, civil penalty no more than $1,000 per action); 12 U.S.C. § 2605(f)(1) (RESPA: for a pattern or practice of noncompliance with CFPB regulations, no more than a $2,000 penalty); 47 U.S.C. § 227(b)(3) (TCPA: no more than $500 per unlawful call). Any award here should not exceed these amounts.

## PART II.    Legal Fees

### A.    The Bankruptcy Court Erred by Awarding Adnette Attorney Fees Under § 362(k) Where She Suffered No Pre-Litigation Stay-Related Injuries

As set forth above, pre-litigation "injury" resulting from the stay violation is a distinct element of § 362(k). *In re Fernandez*, 227 B.R. at 180 ("[A] prima facie case under § 362[k] *requires* a showing (1) by an individual debtor of (2) *injury from* (3) a willful (4) violation of the stay." (emphasis added)) (holding there is no "injury" even upon a technical stay violation if stay relief would have been granted on request).

The Ninth Circuit has recognized that the "injured by" language stands as a predicate to and limitation of any damages awarded under § 362(k).  *See Dawson v. Wash. Mut. Bank (In re Dawson)*, 390 F.3d 1139, 1150 (9th Cir. 2004) (outlining test for award of emotional distress damages under § 362(k) and grounding the "third requirement, that of a nexus between the claimed damages and the violation of the stay . . . in the statute itself.  ***The individual must be 'injured by' the violation to be eligible to claim actual damages.***" (emphasis added)).

The "injured by" requirement can be met by the existence of pre-litigation damages, an ongoing stay violation that requires judicial intervention, or the need for judicial intervention to achieve some other available remedy (*e.g.*, establishing a judicial order in violation of the stay is void).  But the "injured by" requirement cannot be manufactured from the cost of bringing an unnecessary stay violation claim.  Otherwise, *every* debtor could create its own injury for *every* stay violation, rendering the "injured by" requirement a nullity.  Put in the context of § 362(k)'s purpose, such fees are unnecessary to make the debtor "whole"—to restore the status quo prior to the stay violation—as the debtor was "whole" before the litigation.  *See, e.g., Easley*, 910 F.3d at 1292-93 ("Section 362(k) thus seeks to make debtors whole, as if the violation never happened, to the degree possible.").

Where an unnecessary § 362(k) claim has been litigated, the foregoing rule becomes intertwined with the debtor's duty to mitigate damages and the bankruptcy attorney's separate duty to avoid incurring unnecessary and unreasonable fees.  A seminal case in this area, *In re Hutchings*, illustrates this connection in circumstances very similar to this case:

> While the Court finds that Ocwen violated the stay, the preponderance of the evidence is that Mr. Hutchings was not injured by Ocwen's stay violations.  First, the evidence is uncontroverted that Ocwen's "stay violating" contact with Mr. Hutchings ended before the pending complaint was filed. . . .  Second, the only damages Mr. Hutchings claims are those associated with the prosecution of the pending complaint.  And

34

1
2
3
4
5
6
7
8

> the only evidence offered to prove any damages was evidence of
> damages that occurred after Ocwen ceased its contact with him.
> . . . Consequently, the Court must conclude that Mr. Hutchings
> was not injured by Ocwen's actions.  And as the many cases
> discussed later in this opinion explain, only an injured party may
> recover under section 362[k].  And that recovery includes costs
> and attorneys fees.
>
> . . .
>
> [U]nder the law of mitigating damages, Mr. Hutchings had
> the responsibility to avoid the damages he incurred by not filing
> his action.

9
10
11

*Hutchings v. Ocwen Fed. Bank, FSB (In re Hutchings)*, 348 B.R. 847 (Bankr. N.D. Ala. 2006) (collecting numerous supporting cases); *accord In re McHenry*, 179 B.R. at 169 (declining to award fees without pre-litigation injury or ongoing stay violation).

12
13
14
15
16
17

Indeed, courts have found that the debtors' bankruptcy attorney has a duty to "filter[] out futile actions brought for technical violations where no real damages have occurred." *In re Frasier*, 613 B.R. at 277.  The consequences of the failure by an attorney to fulfill its gatekeeping role must be borne by the attorney.  "Attorneys should not receive a windfall of attorneys' fees when most, if not all, of the time expended occurred after the resolution of any technical violation." *Id.*

18
19
20
21
22
23
24
25
26

The application of the foregoing rules here is clear.  Adnette's only damages related to her time away from work to prosecute her claims and filing fees, all of which were incurred well after the stay violation had stopped. Ex. N, Original Ruling at 51, 53-54.[5]  In addition, Debtors' counsel failed to perform the gatekeeping function required of him.  He brought a § 362(k) claim by Adnette even though she had no pre-litigation damages and there was no ongoing stay violation.  On this undisputed record, it is clear Adnette failed to mitigate her damages as required.  And § 362(k) remedies only damages attributable to the relevant stay violation. *Dawson*, 390 F.3d

27
28

---

[5] *See also id*. at 24 (Adnette received letter on September 24, 2018 informing her that Rushmore was transferring servicing effective October 15, 2018); *id*. at 26 (Adnette hired new counsel in January 2019).

at 1150.  For these reasons, the Bankruptcy Court had no discretion to award Adnette's attorney fees, or, alternatively, abused that discretion by failing to require Adnette to mitigate her damages or her counsel to perform the mandated role of gatekeeper.

Lastly, Rushmore anticipates that the Debtors will point to the broad language in *Schwartz-Tallard*, providing that injured debtors are entitled to attorney fees for *successfully* defending damages claims on appeal, and *Easley,* providing that injured debtors are entitled to attorney fees for *successfully* challenging a damage award.  *See Schwartz-Tallard*, 803 F.3d 1095; *Easley*, 910 F.3d 1286.  But neither *Schwartz-Tallard* nor *Easley* eliminated the Ninth Circuit's clear pronouncement in *Dawson* that only a debtor "injured by" the stay violation is eligible for relief under § 362(k) in the first place.

Both *Schwartz-Tallard* and *Easley* addressed a situation where the fees were incurred defending or obtaining an actual damages award for a pre-litigation "injury." *See In re Schwartz-Tallard*, 803 F.3d at 1097 (remedy included order of reconveyance and $40,000 in economic and emotional distress damages); *Easley*, 910 F.3d at 1288 (actual damages for pre-litigation garnishments).  And even in the context of truly injured debtors, *Schwartz-Tallard* emphasized that courts should reduce fees where the damages incurred to stop the stay violation were small.  803 F.3d 1095.  And the Bankruptcy Court disregarded the many cases cited by Rushmore on remand requiring such reductions so that stay litigation does not become an opportunistic "sword."  *See*, *e.g.*, *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 11 (B.A.P. 9th Cir. 2002).

**B.   The Bankruptcy Court Erred by Awarding Adnette Attorney's Fees Under § 362(k) For Attorney Time Spent on the Failed Discharge Violation Claims and Willie's Failed § 362(k) Claim**

Adnette's § 362(k) claim is the only surviving claim in this litigation of the four originally pursued.  The Ninth Circuit BAP remanded the Bankruptcy Court's original trial-level fee awards *because* they awarded all of the trial fees, including those spent

on the "failed" discharge claims and Willie's reversed § 362(k) claim.  As the BAP stated:

> The Moons made no effort to segregate time spent on the stay violation from time spent on the discharge injunction violation. Further, the bankruptcy court did not explain, either legally or factually, why it awarded attorney's fees under § 362(k)(1) for what appears to be time spent on the discharge injunction violation. *See Stinson v. Bi-Rite Rest. Supply Inc. (In re Stinson)*, 295 B.R. 109, 118-19 & n.7 (9th Cir. BAP 2003), *rev'd in part on other grounds*, 128 F. App'x 30 (9th Cir. 2005) (affirming order awarding only those fees for time spent on stay violation claim, the only claim on which debtor succeeded).  Despite our general deference to the bankruptcy court's discretion in determining the reasonableness of an attorney's fee, the court must include a "concise but clear" explanation for its fee award.

Ex. X, BAP Op. on Trial Fees at 15-16.

In *Stinson*, the creditor obtained a judgment in violation of the automatic stay and refused to take actions to vacate the judgment. *Stinson*, 295 B.R. at 113.  The debtor filed a complaint: (1) seeking to enjoin the creditor from enforcing the judgment; (2) alleging the actions violated the discharge injunction; (3) alleging the actions violated the automatic stay; (4) alleging the actions violated federal and state deceptive and unfair practices laws; (5) claiming an invasion of privacy rights; and (6) asserting severe emotional distress.  *Id.*  These claims were presented to the bankruptcy court together, and all related to the judgment. *Id.*  "The bankruptcy court rejected the [d]ebtor's initial fee and cost application . . . as insufficiently detailed and encompassing **services unrelated to § 362[(k)]** and directed [d]ebtor's counsel to revise the fee application, warning counsel that failure to comply with the court's order to amend its request by providing more detail and eliminating **noncompensable services** could result in a pro rata award reflecting the ratio of the claims upon which [d]ebtor prevailed to the total claims, multiplied by the number of hours spent." *Id.* at 114 (emphasis added).  When the debtor failed to submit time records that eliminated time spent on noncompensable services, the court disallowed those fees based on its

estimate of them. *Id.*

Here, despite the BAP's specific direction that the court "explain, either legally or factually, why it awarded attorney's fees under § 362(k)(1) for what appears to be time spent on the discharge injunction violation," Debtors' counsel never submitted any segregation of time.  And on remand the Bankruptcy Court awarded ***all*** of the fees for all of the services related to the Debtors' claims at trial and on appeal, with the sole exception that the court, through an estimated adjustment, did not award fees on the discharge claim appeal.  Rushmore contends that in so ruling, the court erred in four distinct ways:

***First***, the court's award of trial-level attorney fees on the discharge claims is premised on the mistaken conclusion that the Debtors succeeded in proving those claims at trial.  Ex. H, Remand Ruling at 11.  As demonstrated above, the Debtors failed to prove a single ***knowing*** discharge violation, and even if they had proven a ***knowing*** discharge violation, Rushmore still could not be held in contempt of the discharge injunction because the Debtors failed to give Rushmore constitutionally adequate prior notice of the underlying proceedings.  The court thus violated Rushmore's due process rights by awarding fees on a failed claim.

***Second***, the court justified its award of trial-level fees on the discharge claims on the basis that the claims were "inextricably linked" to the stay claims.  But the court's rationale for finding the claims "inextricably linked" was infected by the erroneous view that the "the Debtors did . . . succeed in proving that Rushmore violated the discharge injunction."   Ex. H, Remand Ruling at 11 & n.11 ("In other words, because Rushmore never raised before commencement of the evidentiary hearing the primary arguments for which it obtained relief on appeal, Debtors presented the evidence to establish both the automatic stay violations and the discharge violations. Debtors succeeded in doing both.").  Perhaps this why the court considered the claims inextricably linked even though the discharge claims relate to a period (September 26, 2016 - trial) distinct from the § 362(k) claims (December 20,

2014 - September 25, 2016) and were premised on acts and injuries irrelevant to Adnette's § 362(k) claim.

**Third**, the court erred by failing to address the BAP's instruction to reconsider the fee award "in light of [the] reversal of the damages award to Willie and our remand of the punitive damages award." Ex. X, BAP Op. on Trial Fees at 2-3. On remand, none of counsel's time was allocated to Willie's claims. Yet Willie is not entitled to recover any damages or fees whatsoever, and Adnette is not entitled to recover fees spent pursuing Willie's claims, especially for proof of his separate and distinct injuries. Moreover, the court ignored the BAP's instruction on remand to consider whether the remand of the punitive damages award warranted a reduction to fees. *See* Ex. H, Remand Ruling at 9-12 (no discussion of same).

**Fourth**, the court erred by awarding fees for time defending against the adversary proceeding brought by Rushmore. While Rushmore's adversary complaint sought to strike the Contempt Motion, the parties' respective pleadings were largely devoted to attacking and defending the Debtors' plan confirmation order and the avoidance of Rushmore's lien on Adnette's home. Ex. II, BAP Op. on Adv. Fees at 5-7 (describing the action). As the BAP recognized, "Rushmore had every right to challenge the validity of the Lien Avoidance Order and the Confirmation Order given the Moons' failure to provide notice . . . ." *Id.* at 11. So not all of the Debtors' fees defending the action are compensable under § 362(k). The Bankruptcy Court accordingly erred by awarding all of the Debtors' fees without taking evidence to ascertain, as directed by the BAP, which "fees [were] . . . incurred in defending against Rushmore's arguments in defense of its stay violation." *Id.* at 14.

### C. The Bankruptcy Court Erred by Awarding Adnette Appellate Attorney Fees Under § 362(k) On the Erroneous Basis She Prevailed on Appeal

The Debtors' appellate attorney fees and costs were $125,961.50, plus appellate costs of $999.23. The Bankruptcy Court awarded $115,651.77. The approximately

$10,000 difference between what was sought and what was granted was the court's reduction of estimated fees spent on the discharge claim appeal.  Even this was erroneous, as the Bankruptcy Court did allow or require evidence of how counsel's time was actually spent. Additionally, the court did not order ___**any**___ reduction for fees spent unsuccessfully defending Willie's stay claim on appeal.  Similarly, the court ignored the fact that such reversal was the primary impetus for the BAP's remand of every other issue, including the remand of the punitive damages award and the trial-level fee award.

**PART III.   Withdrawal of Reference**

To the extent that the resolution of this appeal necessitates remand, this Court should withdraw the reference from the Bankruptcy Court and rule on those issues directly.  "The district court may withdraw . . . any case or proceeding referred [to the bankruptcy court] on its motion or on timely motion of a party, for cause shown." 28 U.S.C. § 157(d). "In determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008-09 (9th Cir. 1997). Frequently, this analysis begins with the question of whether "non-core" issues predominate because non-core rulings are reviewed *de novo*, so withdrawing the reference saves an unnecessary layer of review.  *Id*. ("Inasmuch as a bankruptcy court's determinations on non-core matters are subject to de novo review by the district court, unnecessary costs could be avoided by a single proceeding in the district court.").

While a § 362(k) claim is a core proceeding, the determination of the appropriate punitive damages award on this § 362(k) claim turns largely on constitutional considerations, which are subject to this Court's *de novo* review. Moreover, withdrawal will prevent further inefficient forum shopping. The Debtors clearly did not like the result they originally received in the appeal to the BAP, so

when Rushmore appealed the Remand Ruling to the BAP the Debtors instead elected to come to this Court. That was their right, even though it is clearly inefficient, as this Court must now get up to speed on what the BAP decided. But, if possible, that should not occur again. And withdrawal of the reference will speed a final resolution, since there would only be one further appeal (to the Ninth Circuit). Finally, withdrawal would not disrupt the administration of the Debtors' bankruptcy cases. Those cases were closed years ago and were only reopened so the Debtors could bring this litigation. Having everything before this Court would lead to a quicker resolution of all the disputes remaining between the parties.

## CONCLUSION

Rushmore requests that the District Court: (a) reverse the $500,000 punitive damages award because it violates due process as a matter of law, and determine the maximum allowable amount, if any, that can be awarded against Rushmore; (b) reverse the $500,000 punitive damages award because the Bankruptcy Court abused its discretion by basing its punitive damages award on incorrect conclusions of law; (c) reverse all of the attorney fee awards; and (d) to the extent that remand on any issue is required, withdraw the reference to address the remand directly.


Dated: October 3, 2022                    /s/ James A. Kohl

                                          James A. Kohl, Esq.
                                          Nevada Bar No. 5692
                                          Cami M. Perkins, Esq.
                                          Nevada Bar No. 9149
                                          HOWARD & HOWARD ATTORNEYS PLLC
                                          3800 Howard Hughes Parkway, Suite 1000
                                          Las Vegas, Nevada 89169

                                          And


                                          Leib M. Lerner (CA Bar No. 227323)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ALSTON & BIRD LLP
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
*Admitted Pro Hac Vice*
Jacob A. Johnson (GA Bar No. 849407)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
*Admitted Pro Hac Vice*

*Attorneys for Rushmore Loan Management Services, LLC*

RUSHMORE'S OPENING BRIEF

## **Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

    1.    This document complies with the form and content requirements of Fed. R. Bankr. P. 8013(f)(3)(A), because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains no more than 13,000 words.

    2.    This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because it has been prepared in a proportionally spaced typeface using Word in Time New Roman 14-point font.

Dated: October 3, 2022

/s/ James A. Kohl

James A. Kohl, Esq.
Nevada Bar No. 5692
Cami M. Perkins, Esq.
Nevada Bar No. 9149
**HOWARD & HOWARD ATTORNEYS PLLC**
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169

And

Leib M. Lerner (CA Bar No. 227323)
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
*Admitted Pro Hac Vice*

Jacob A. Johnson (GA Bar No. 849407)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
*Admitted Pro Hac Vice*

*Attorneys for Rushmore Loan Management Services, LLC*

# CERTIFICATE OF SERVICE

On October 3, 2022, I served the following document:

**RUSHMORE'S OPENING BRIEF**

I served the above-named document by the following means to the persons as listed below: ***(Check all that apply)***

☐    a.    ECF System

☒    b.    United States mail, postage fully prepaid

Christopher P. Burke, Esq.
CHRIS P. BURKE &
ASSOCIATES
218 S. Maryland Parkway
Las Vegas, NV 89101
*Attorney for Willie N. Moon and*
*Adnette M. Gunnels-Moon*

U.S. Trustee, Las Vegas
300 Las Vegas Boulevard South, Suite 4300
Las Vegas, NV 89101-5803

I declare under penalty of perjury that the foregoing is true and correct.

Signed on: October 3, 2022

Jacob A. Johnson        /s/ Jacob A. Johnson
(Name of Declarant)        (Signature of Declarant)