# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE MOON | Case No.: 2:22-cv-01126-APG |
| RUSHMORE LOAN MANAGEMENT SERVICES, LLC, | **Opinion** |
| Appellant | |
| v. | |
| WILLIE N. MOON and ADNETTE M. GUNNELS-MOON, | |
| Appellants | |
| AND RELATED CROSS APPEAL | |

This case is a prime example of how small errors can multiply into expensive and time-consuming litigation.  This dispute could have been avoided entirely if either the debtors (through their counsel) had sent bankruptcy notices to the lender's correct address or the lender had, upon receiving actual notice of the bankruptcy, responded appropriately.  Instead, this dispute has generated a two-day evidentiary hearing, multiple rulings by the bankruptcy court, several appeals and cross-appeals to the Bankruptcy Appellate Panel (BAP), a remand to the bankruptcy court for another ruling, and now an appeal and cross-appeal before me.  And I am likely just a speed bump on the parties' way to the Ninth Circuit.

The parties are familiar with this case's factual background and complicated procedural history, so I give only a summary here.[1]  Adnette Gunnels-Moon was the borrower on a second mortgage on her home, but her husband, Willie Moon, was not.  Rushmore Loan Management

---

[1] The bankruptcy court set out the factual background in its original order. ECF No. 22-2.  It detailed the procedural history in its order on remand. ECF No. 21-7.

Services, LLC serviced the loan from January 1, 2012 through October 15, 2018.  In March 2013, the Moons filed a joint Chapter 13 bankruptcy petition.  Although they identified Rushmore as a creditor, they listed the wrong address, and Rushmore did not receive notice of the bankruptcy case when it was filed.

Having no notice of the bankruptcy, Rushmore continued to attempt to collect on the loan, including by calling the Moons' residence numerous times while the automatic bankruptcy stay was in place.  During one such call in December 2014, Willie told the Rushmore representative that they had filed bankruptcy.  The Rushmore representative made a note about the comment, but Rushmore thereafter did nothing to investigate whether the Moons were in bankruptcy and instead continued to contact the Moons, including after the bankruptcy discharge was entered in the fall of 2016.  Rushmore's inaction was based on its unwritten and undisclosed policy not to accept a bankruptcy notification from a third party that the borrower had not authorized to discuss the loan.

In January 2019, the Moons moved to reopen their bankruptcy case to seek contempt sanctions against Rushmore for violating the automatic stay[2] and the discharge injunction.[3] Following a two-day evidentiary hearing, the bankruptcy court found in favor of the Moons on the automatic stay violation and awarded damages in the amount of $742.10 for fees Adnette incurred in reopening the proceeding, $100,000 in emotional distress damages to Willie, and

---

[2] Title 11 U.S.C. § 362(a) provides for an automatic stay of collection activity against the debtor upon the filing of a bankruptcy petition.  Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

[3] Under 11 U.S.C. § 524, a bankruptcy discharge operates as an injunction that bars creditors from collecting debts that have been discharged.  A violation of the discharge injunction may be remedied through a civil contempt motion in the bankruptcy case. *See Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Cir. 2011); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002).

$200,000 in punitive damages.  The bankruptcy court also found that Rushmore engaged in conduct that would violate the discharge injunction but there was insufficient evidence as to what date Rushmore learned of the discharge, so it awarded no damages for a discharge injunction violation.  By separate order, the bankruptcy court awarded $56,150 in attorney's fees and $10,857.94 in costs but denied the Moons' request for a fee enhancement.  The bankruptcy court subsequently awarded an additional $3,500 in supplemental fees that the Moons incurred in filing a reply to the first fee motion.  Finally, the bankruptcy court denied the Moons' request for attorney's fees and costs incurred in responding to an adversary proceeding brought by Rushmore.

Both parties filed a series of appeals and cross-appeals to the BAP of the original contempt ruling as well as the subsequent rulings on the Moons' attorney's fee requests.  No one appealed the bankruptcy court's ruling that Rushmore willfully violated the automatic stay and that Adnette was entitled to damages of $742.10 as a result.  Rushmore appealed the emotional distress and punitive damage awards, as well as the orders granting fees and supplemental fees.[4] The Moons appealed the decision not to award damages for Rushmore's violation of the discharge injunction and the decision not to award fees and costs for defending against the adversary proceeding.

The BAP entered a series of decisions resolving the various appeals.  In its decision addressing the bankruptcy court's contempt rulings, the BAP reversed the $100,000 award in Willie's favor because it concluded that Rushmore's conduct did not violate Willie's automatic stay.  The BAP affirmed the bankruptcy court's finding that Rushmore's conduct warranted a

---

[4] Rushmore also appealed the bankruptcy court's decision to allow the Moons' expert to testify at the evidentiary hearing.  That is not at issue in the appeals before me, so I do not mention it further.

punitive damage award.  But it vacated and remanded the $200,000 punitive damage award

because it had reversed Willie's $100,000 damage award.  In doing so, the BAP stated that on

remand, the bankruptcy court could consider attorney's fees and costs in determining an

appropriate punitive damage award for Adnette.  Finally, it affirmed the bankruptcy court's

denial of damages for the Moons' claim for a discharge injunction violation, and it rejected the

Moons' related argument that the discharge injunction violation could be considered a continuing

automatic stay violation.

      The BAP addressed the attorney's fees in separate decisions.  With respect to the fees and

costs related to the contempt motion, the BAP affirmed the bankruptcy court's decision to award

fees and to not apply an enhancement.[5]  But it reversed and remanded for the bankruptcy court to

explain why it awarded fees for time spent on the discharge injunction violation.  Additionally,

the BAP concluded that because it had reversed and remanded Willie's damages award, the

bankruptcy court should reconsider the fee award and whether a fee enhancement was

appropriate.  The BAP also vacated and remanded the supplemental fee award for

reconsideration by the bankruptcy court because it was closely related to the first fee order.  And

the BAP remanded for the bankruptcy court to award reasonable attorney's fees and costs to the

extent that Rushmore's adversary complaint sought to challenge Adnette's contempt proceeding

for Rushmore's automatic stay violation.  Finally, the BAP ordered the bankruptcy court to

determine appellate fees for the various appeals.[6]

      On remand, the bankruptcy court identified its tasks as:

---

[5] The BAP decision addressed other arguments the parties raised before that court that do not impact the issues before me, so I do not discuss them.

[6] The parties made several attempts to appeal the BAP's decisions, but the Ninth Circuit dismissed those appeals for lack of jurisdiction.

1. To determine the amount of punitive damages for Rushmore's willful violation of the automatic stay given the reduction in compensatory damages and given the BAP's direction that the bankruptcy court could consider attorney's fees and costs in determining the amount of the punitive damage award.

2. To explain the attorney's fee award to the extent it contains time spent on the discharge injunction violation and to reconsider a fee enhancement.

3. To award reasonable fees and costs incurred in responding to Rushmore's adversary complaint to the extent those are part of Adnette's automatic stay violation damages.

4. To determine the amount of appellate fees Adnette Moon is entitled to as part of her automatic stay violation damages.

The bankruptcy court began with the attorney's fees on the first and supplemental fee awards because its decisions on those would impact the punitive damage award. The bankruptcy court declined to reconsider its decision to not apply a fee enhancement,[7] and it again awarded the full amount of the first and supplemental fee requests, explaining that the automatic stay and discharge injunction violations were inextricably linked and litigated together before the bankruptcy court. The bankruptcy court thus awarded $67,007.94 for the first fee award and supplemental fees in the amount of $3,500, for a total fee award to Adnette Moon of $70,507.94.

Based on this fee award and the $742.10 compensatory damage award to Adnette that no one appealed, the bankruptcy court then determined a punitive damage award. The bankruptcy court awarded $500,000 in punitive damages.

---

[7] The Moons do not appeal this decision.

The bankruptcy court then determined the amount of fees to award for Adnette having to respond to Rushmore's adversary complaint.  The bankruptcy court awarded the entirety of the fees incurred in defending against the adversary complaint for a total of $14,827.

Finally, the bankruptcy court awarded Adnette $70,415.95 in appellate fees because she prevailed on her appeals related to the first fee decision, the supplemental fee decision, and the second fee decision related to the adversary proceeding.  The bankruptcy court also awarded fees related to the appeal of the contempt decision but reduced them by twenty percent because at least some of those fees were incurred in addressing the discharge injunction violation.  It thus awarded $45,235.82 in appellate fees for the contempt decision appeal, for a total appellate fee award of $115,651.77.[8]

Rushmore and the Moons appealed the bankruptcy court's order, and the Moons elected to have the appeals decided by this court rather than the BAP.  Rushmore appeals the fee awards and the punitive damages award on a variety of grounds and requests that I withdraw the reference if I reverse the bankruptcy court.  In their cross-appeal, the Moons argue that Willie has standing to recover for the automatic stay violation, that Rushmore's discharge violation should be considered a continuing stay violation, and that Rushmore should be charged with knowledge of the discharge order either through willful blindness or constructive notice, and thus there was a basis for awarding damages for a discharge injunction violation.

For the reasons discussed below, I decline to consider issues that are raised for the first time on appeal or that were already decided by the BAP.  I affirm in part and reverse in part the

---

[8]  The bankruptcy court did not include in its punitive damages calculation the fees it awarded for responding to Rushmore's adversary complaint or the appellate fees, except to state that if these fees were included, the ratio between compensatory and punitive damages is closer to 2.48:1 rather than 7:1 if those fees are excluded from the punitive damages analysis.

1  bankruptcy court's award of attorney's fees, costs, and punitive damages.  In the interest of

2  efficient resolution of this matter, I withdraw the reference as to those issues on which I reverse

3  the bankruptcy court's decision, and I enter final judgment.

4  **I.  ISSUES NOT RAISED BELOW OR ALREADY DECIDED**

5       I decline to consider any issue that was never raised before the bankruptcy court or the

6  BAP. *See In re Mortg. Store, Inc.*, 773 F.3d 990, 998 (9th Cir. 2014).  Consequently, I do not

7  address Rushmore's newly raised argument that, as a matter of law, Adnette cannot recover any

8  attorney's fees as damages because she suffered no pre-litigation injury from Rushmore's

9  automatic stay violation.  Although Rushmore argues I should consider the question as one of

10  pure law for which no further factual development is needed, the Ninth Circuit has this same

11  discretion when the parties inevitably appeal my order. *See id.*  This case is already procedurally

12  complicated, and the most judicially efficient resolution is for me to confine my decision to a

13  review of the bankruptcy court's order on remand without considering a new issue raised for the

14  first time before me.

15       For similar reasons, I decline to reconsider any issues already resolved by the BAP.

16  Under the law of the case doctrine, "when a court decides upon a rule of law, that decision

17  should continue to govern the same issues in subsequent stages in the same case." *Christianson*

18  *v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988); *Hall v. City of Los Angeles*, 697

19  F.3d 1059, 1067 (9th Cir. 2012).  This doctrine "promotes the finality and efficiency of the

20  judicial process by protecting against the agitation of settled issues." *Christianson*, 486 U.S. at

21  816 (quotation omitted).  The Ninth Circuit will review the bankruptcy court's and BAP's

22  rulings under the same standards that I would if I declined to follow the law of the case here. *See,*

23  *e.g.*, *In re Albert*, 998 F.3d 1088, 1091 (9th Cir. 2021).  Judicial efficiency counsels against me

1  weighing in on issues the BAP has already decided and on which the bankruptcy court based its

2  order on remand.  That does not preclude the Ninth Circuit from reviewing on appeal all issues

3  properly preserved. *See In re Woods*, 173 F.3d 770, 776 (10th Cir. 1999) ("So long as a matter is

4  properly preserved in a lower court, the fact that the lower court can properly refuse

5  reconsideration as a matter of law of the case of course does not prevent subsequent review on

6  appeal." (simplified)).  Consequently, I do not address any of the issues raised in the Moons'

7  cross-appeal because the BAP already decided that Willie cannot recover automatic stay

8  damages, that there was no continuing violation of the automatic stay, and that the bankruptcy

9  court did not abuse its discretion by not awarding damages for a violation of the discharge

10  injunction.

11  **II.  WITHDRAWING THE REFERENCE**

12      I "may withdraw, in whole or in part, any case or proceeding referred [to the

13  bankruptcy court] on [my] own motion or on timely motion of any party, for cause shown." 28

14  U.S.C. § 157(d).  In determining whether good cause exists to withdraw the reference, I consider

15  "the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy

16  administration, the prevention of forum shopping, and other related factors." *In re Canter*, 299

17  F.3d 1150, 1154 (9th Cir. 2002) (quotation omitted).

18      To the extent I determine that the bankruptcy court has erred, I withdraw the reference

19  and enter a final ruling rather than remand to the bankruptcy court.  The efficient use of judicial

20  resources weighs against another remand and round of appeals in this already protracted

21  litigation.  Another remand would further delay final disposition of this case, as neither party

22  could appeal my interlocutory decision to the Ninth Circuit.  Instead, the parties undoubtedly

23  would again appeal the bankruptcy court's order, resulting in yet another round of appeals before

1  either me or the BAP.  The uniformity of bankruptcy administration will not be disrupted

2  because the Moons' bankruptcy case is closed except for the resolution of the stay violation and

3  related damages issues.  The Moons contend that Rushmore is forum shopping to avoid a return

4  to the bankruptcy court, but the Moons arguably also forum-shopped by electing to have this

5  appeal decided by me rather than returning to the BAP.  In sum, the last vestige of efficiency is

6  preserved by me withdrawing the reference and entering a final decision so the parties can appeal

7  to the Ninth Circuit as expeditiously as possible.

8  **III. RUSHMORE'S APPEAL**

9       Rushmore appeals the bankruptcy court's order (on remand) on both the attorney's fees

10  and punitive damages awards.  I "review the bankruptcy court's legal conclusions de novo [and]

11  its factual findings for clear error." *In re Albert*, 998 F.3d at 1091.  Like the bankruptcy court, I

12  begin with the attorney's fees issues because resolution of those issues may impact the punitive

13  damages award.

14       **A. Attorney's Fees**

15       I "review de novo the bankruptcy court's compliance with the mandate of an appellate

16  court." *In re Blaskey*, No. 8:11-AP-01462-ES, 2016 WL 4191775, at *5 (B.A.P. 9th Cir. Aug. 8,

17  2016).  I review the bankruptcy court's award of attorney's fees for an abuse of discretion. *In re*

18  *Strand*, 375 F.3d 854, 857 (9th Cir. 2004).  A bankruptcy court abuses its discretion if it applies

19  the wrong legal standard or if its factual findings are clearly erroneous. *Meyer v. Portfolio*

20  *Recovery Assocs., LLC*, 707 F.3d 1036, 1040 (9th Cir. 2012); *see also In re Bennett*, 298 F.3d

21  1059, 1063 (9th Cir. 2002) ("The bankruptcy court's attorneys' fee determination will only be

22  reversed if the court abused its discretion or erroneously applied the law.").  If the bankruptcy

23  court "identified the correct legal rule to apply to the relief requested," then I "must determine

whether [its] application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Perry v. Brown*, 667 F.3d 1078, 1084 (9th Cir. 2012) (quotation omitted). "If it was, then [I am] able to have a definite and firm conviction that the [bankruptcy] court reached a conclusion that was a mistake or was not among its permissible options, and thus that it abused its discretion." *Id.* (quotation omitted).

Bankruptcy Code section 362(k) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." This includes an award of attorney's fees incurred in pursuing damages for a stay violation, fees incurred in establishing the claim for fees, and appellate fees for successfully defending a claim on appeal. *See Easley v. Collection Serv. of Nev.*, 910 F.3d 1286, 1291-93 (9th Cir. 2018); *In re Schwartz-Tallard*, 803 F.3d 1095, 1101 (9th Cir. 2015). "Section 362(k) thus seeks to make debtors whole, as if the violation never happened, to the degree possible." *Easley*, 910 F.3d at 1292-93.

A fee award is mandatory if the bankruptcy court finds a stay violation was willful, although the court "retain[s] the discretion to eliminate unnecessary or plainly excessive fees." *In re Schwartz-Tallard*, 803 F.3d at 1101. Additionally, there must be "a nexus between the claimed damages and the violation of the stay" because the individual must be "injured by the violation to be eligible to claim actual damages." *In re Dawson*, 390 F.3d 1139, 1150 (9th Cir. 2004) (quotation omitted). Consequently, fees should be awarded as actual damages only if they are causally linked to the stay violation.

1    <u>1.  Fees for the Contempt Proceeding and Supplemental Fees</u>

2    On remand, the bankruptcy court reentered its award of $67,007.94 in attorney's fees and

3    costs that Adnette incurred in prosecuting the automatic stay violation and $3,500 for fees

4    incurred defending the original fee award.  In response to the BAP's direction to explain why it

5    awarded fees for work done on the discharge injunction claim, the bankruptcy court stated that

6    the automatic stay and discharge injunction violations were inextricably linked and litigated

7    together, so all fees were incurred litigating the automatic stay violation.

8    Rushmore contends the bankruptcy court erred by not separating out fees incurred on the

9    discharge claim and on Willie's automatic stay claim.  Rushmore contends that the two types of

10   claims were not inextricably linked because they involve different acts during different time

11   periods under different law.  And Rushmore contends that the bankruptcy court erred by not

12   parsing out time allocated to Willie's claims.  Finally, Rushmore argues that the bankruptcy

13   court ignored the BAP's instruction to consider whether the remand of the punitive damages

14   award warranted a reduction in attorney's fees.

15   The Moons respond that Adnette was the prevailing party and is entitled to fees.  They

16   contend that the bankruptcy court did not err in refusing to apportion fees where their claims

17   were related and where attorney work on one claim was inextricably intertwined with the other.

18   The BAP directed the bankruptcy court to explain why it did not parse out fees between

19   those incurred in prosecuting the automatic stay violation and those incurred in relation to the

20   discharge injunction.  The BAP did not hold that the bankruptcy court could not award fees

21   related to the discharge injunction, only that it must explain why it is doing so to enable appellate

22   review of that decision.

23

The bankruptcy court explained its decision, and it did not abuse its discretion in awarding the entire amount of fees and costs for the contempt proceedings.  "[D]espite the general rule of apportionment, in a specific case apportionment might not be required if it is impossible to differentiate between work done on claims" because those claims are "so inextricably intertwined that even an estimated adjustment would be meaningless." *Gracie v. Gracie*, 217 F.3d 1060, 1069-70 (9th Cir. 2000).  As the bankruptcy court explained, the automatic stay and discharge injunction violations were litigated jointly with little distinction either in the briefs or at the evidentiary hearing.  At the evidentiary hearing, Rushmore's representative's testimony regarding Rushmore's policies was relevant to both violations, as was the Moons' expert's testimony, because both violations arose out of the same unwritten Rushmore policy and the same course of conduct of Rushmore continuing to contact the Moons despite Willie telling Rushmore about the bankruptcy. *Cf. Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1174 (9th Cir. 2019) (stating claims are related if they "arose out of the same course of conduct" (quotation omitted)); *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005) (stating a plaintiff can recover reasonable fees for prosecuting claims that are related to the successful claims if they "involve a common core of facts or are based on related legal theories" (quotation omitted)).  The bankruptcy court therefore did not ignore the mandate or abuse its discretion by not apportioning fees incurred in litigating the discharge injunction.

The bankruptcy court also did not abuse its discretion by declining to make a reduction for Willie's failed claims because Willie's testimony was relevant to Adnette's successful stay violation claim.  Willie was the one who took Rushmore's calls, so he would have testified even if he did not pursue his own claim.  And harm to third parties such as Willie can be considered in evaluating the degree of reprehensibility in determining an appropriate punitive damage award

1  for Adnette. *See Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007).  Consequently,

2  Adnette would have incurred the same fees related to the contempt proceedings even if Willie

3  had never brought claims in his own right.

4        Even if the bankruptcy court could have made some minor adjustments to address

5  apportionment, the bankruptcy court did not abuse its discretion in declining to do so.  In

6  determining what fees are causally linked to the stay violation, courts "need not, and indeed

7  should not, become green-eyeshade accountants (or whatever the contemporary equivalent is)."

8  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109-11 (2017) (quotation omitted).  "The

9  essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Id.*

10  (quotation omitted).  The bankruptcy court thus can (and did) "take into account its overall sense

11  of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* (simplified).

12  The bankruptcy court's judgments, "in light of [its] superior understanding of the litigation, are

13  entitled to substantial deference on appeal." *Id.* (quotation omitted).  The bankruptcy court

14  therefore did not abuse its discretion in awarding all fees and costs related to the original

15  contempt proceedings, including the supplemental fees.

16        Finally, Rushmore contends the bankruptcy court disregarded the BAP's instruction to

17  consider whether the remand of the punitive damages award warranted a reduction in attorney's

18  fees.  But the BAP did not indicate it was remanding for a reduction in attorney's fees.  Rather, it

19  stated that because it "reversed the award of damages to Willie and remanded the punitive

20  damages award for the bankruptcy court to review in light of our decision, it is appropriate to

21  allow the court to reconsider the amount of the attorney's fee award and whether a fee

22  enhancement is appropriate." ECF No. 25-6 at 17.  The bankruptcy court did as the BAP directed

23  by reconsidering the fee award amount and whether an enhancement was appropriate, so it did

not disregard the mandate or abuse its discretion.  I therefore affirm the bankruptcy court's award of $67,007.94 in attorney's fees to Adnette for prosecution of the original contempt proceedings and $3,500 in supplemental fees, for a total fee award to Adnette in the amount of $70,507.94 for the original contempt proceeding.

### 2.  Fees for the Adversary Proceeding

The bankruptcy court originally did not award fees incurred in defending against Rushmore's adversary proceeding.  The BAP remanded for the bankruptcy court to consider whether at least some of those fees should be awarded given that Rushmore sought to strike the motion for contempt as part of its adversary complaint.  On remand, the bankruptcy court concluded that because Rushmore's adversary sought to preclude Adnette from obtaining any relief from the automatic stay violation, all the fees and costs she incurred in defending against it were "necessarily part of her stay violation damages claim." ECF No. 21-7 at 24.  Rushmore argues the bankruptcy court erred by awarding all the fees for time spent defending against the adversary proceeding without discerning which fees were incurred in defending against Rushmore's arguments in defense of its stay violation.

The bankruptcy court did not abuse its discretion in awarding all fees incurred in defending against the adversary.  Rushmore's adversary complaint requested that the court strike the motion for contempt sanctions. *See Rushmore Loan Mgmt. Servs., LLC v. Moon*, Bankr. D. Nev. No. 19-01090-mkn, ECF No. 1 at 6 (requesting the bankruptcy court to "strike the motion for contempt, as it is the direct result of a constitutional deprivation of notice to Rushmore," and to "strike the motion for contempt, as it is the direct  result of the unclean hands of the debtors in not providing any notice to Rushmore").  Rushmore raised, and continues to raise, similar arguments in opposition to the automatic stay violation and resulting damages that it raised in the

adversary.  Thus, the bankruptcy court's factual finding that all fees were incurred in defense of the automatic stay violation is not clearly erroneous.  And for the same reasons discussed above, the bankruptcy court did not err in declining to apportion fees as between Adnette and Willie. There is nothing in the adversary litigation that was specific to only Willie. *See Rushmore Loan Mgmt. Servs., LLC v. Moon*, Bankr. D. Nev. No. 19-01090-mkn, ECF Nos. 1; 14; 19; 22. Consequently, Adnette would have incurred the same fees even if Willie did not bring a claim on his own behalf.  I therefore affirm the bankruptcy court's award of $14,827 in attorney's fees and costs related to the adversary proceeding.

### 3.  Appellate Fees

The BAP directed the bankruptcy court to determine what amount, if any, to award for appellate attorney's fees in relation to all the BAP appeals.  The bankruptcy court awarded $70,415.95 for fees incurred in the appeals of the fee decision, the supplemental fee decision, and the adversary fee decision because it determined that Adnette prevailed on each of those appeals.  It awarded an additional $45,232.82 for fees Adnette incurred in relation to the contempt appeal.  The bankruptcy court reasoned that in relation to the contempt appeal, both sides prevailed to some extent and the defense of the automatic stay violation was severable from other issues on appeal on which Adnette did not prevail, so it reduced Adnette's fees by 20%.

Rushmore contends the bankruptcy court erred by not requiring Adnette's counsel to specify how much time was spent on tasks that Adnette prevailed on and did not reduce fees at all for time spent unsuccessfully appealing Willie's claims.  The Moons argue that the bankruptcy court did not err because Adnette generally prevailed on appeal and the fees were not severable.

/ / / /

*a. Fees for Appeals Regarding Original, Supplemental, and Adversary Fees*

The bankruptcy court did not abuse its discretion by awarding Adnette full fees for the appeals related to the original fee award, the supplemental fee award, and the adversary. The BAP held that Adnette was entitled to fees as part of her compensatory damages and that those fees could be included in a punitive damage calculation. It also reversed the bankruptcy court's denial of fees related to the adversary and directed the bankruptcy court to determine the proper amount of fees to award in relation to the adversary. Although the BAP remanded for the bankruptcy court to determine total fees and to explain why it awarded fees related to the discharge injunction, the BAP did not reverse any of the bankruptcy court's rulings related to the original or supplemental fee awards. And its reversal on the fees in relation to the adversary is a ruling in Adnette's favor that permitted the bankruptcy court to determine whether those fees were actual damages caused by the automatic stay violation. The bankruptcy court therefore did not err in awarding as actual damages the appellate fees Adnette incurred on the fee appeals.

The bankruptcy court did not apportion any amount for arguments made in support of fees for the discharge violation or for Willie's claims. But the Moons defended their fees for both the automatic stay and discharge injunction violations on the same grounds on appeal as adopted by the bankruptcy court on remand: that they were related because they were based on the same course of conduct. Additionally, a review of the briefs shows little time was devoted specifically to the discharge injunction, so a reduction would be the type of minute accounting not required of the bankruptcy court. The decision not to apportion does not rise to the level of an abuse of discretion. *See, e.g.*, *In re Moon*, 9th Cir. BAP Appeal No. 20-1144, ECF Nos. 17, 20; *see also In re Moon*, 9th Cir. BAP Appeal No. 20-1155; *In re Moon*, 9th Cir. BAP Appeal No. 20-1195. Finally, the fee appeals did not distinguish between Adnette and Willie, so no

reduction is warranted for time spent on issues specific only to Willie because there were none.  I therefore affirm the bankruptcy court's decision to award full fees on the three appeals related to the recovery of fees, supplemental fees, and adversary fees in the amount of $70,415.95.

### b. Fees for the Contempt Appeal

On remand, the bankruptcy court disallowed 20% of the time Adnette's counsel spent on issues related to the discharge violation, determining that in the contempt appeal that time was severable from time spent on the automatic stay arguments. ECF No. 21-7 at 29.  The bankruptcy court did not indicate that it was reducing the fees for time spent on issues specific to Willie. Rushmore contends this was error and that it, not Adnette, largely prevailed on this appeal.

The bankruptcy court abused its discretion in failing to apportion fees for time spent on Willie's unsuccessful appeal.  Those fees were not incurred as actual damages arising from Rushmore's violation of Adnette's automatic stay.  A substantial portion of the Moons' briefs on the contempt appeal addressed Willie's standing and the propriety of Willie's emotional distress damage award, in addition to the discharge violation. *In re Moon*, 9th Cir. BAP Appeal No. 20-1057, ECF Nos. 22, 28, 56; *In re Moon*, 9th Cir. BAP Appeal No. 20-1070, ECF Nos. 10, 15. Indeed, some of the Moons' briefs addressed little else. *In re Moon*, 9th Cir. BAP Appeal No. 20-1057, ECF Nos. 28, 56; *In re Moon*, 9th Cir. BAP Appeal No. 20-1070, ECF Nos. 15, 39. Those fees are severable and do not count as damages incurred in defending Adnette's stay violation claim on appeal.  Where it is possible to apportion, the court should do so. *See Gracie*, 217 F.3d at 1070 (stating, in relation to a Lanham Act claim, that "apportionment or an attempt at apportionment is required unless the court finds the claims are so inextricably intertwined that even an estimated adjustment would be meaningless").  The bankruptcy court's failure to do so in this instance thus constitutes an abuse of discretion.

The Moons' billing records on appeal do not distinguish between work performed on the various issues. *In re Moon*, 9th Cir. BAP Appeal No. 20-1057, ECF No. 62.  Like the bankruptcy court, I therefore estimate the time spent on issues for which Adnette cannot recover fees.  When considering the time spent on the discharge injunction and Willie's unsuccessful appeal, I reduce the fees and costs by 80%.  Consequently, I reverse this portion of the bankruptcy court's remand order and award reduced appellate fees for Adnette in the amount of $11,308.96. ($56,544.78 in fees and costs x .20).

### 4.  Proportionality and Mitigation

Rushmore argues that the bankruptcy court abused its discretion by awarding Adnette substantial attorney's fees to prosecute a stay violation that had already ceased by the time the Moons moved for contempt sanctions and for which Adnette had suffered only $742.10 in compensatory damages.  Rushmore argues that awarding thousands of dollars in attorney's fees (which are then used as the basis for a substantial punitive damage award) is unreasonable in relation to Adnette's minimal compensatory damages and lack of pre-litigation injury.[9]  The Moons respond that Rushmore is attempting to shift the blame for its willful stay violation to the debtor, that attorney's fees are actual damages under § 362(k), and that Rushmore harassed the Moons for years such that a full attorney's fee award is appropriate.

---

[9] This is related to, but different than, Rushmore's argument raised for the first time on appeal before me that the bankruptcy court could not award Adnette attorney's fees as a matter of law because she suffered no pre-litigation injury.  As stated above, I decline to address this issue because Rushmore did not raise it before the bankruptcy court or the BAP.  But I will address Rushmore's argument that the bankruptcy court abused its discretion by not reducing or eliminating fees based on proportionality or failure to mitigate.  Rushmore raised that issue on remand before the bankruptcy court. *See* ECF No. 21-1 at 16-19; 21-3 at 8-9, 10 n.8, 13; 21-5 at 7 n.6, 10-11.

In providing for the recovery of attorney's fees as actual damages under § 362(k), "Congress sought to encourage injured debtors to bring suit to vindicate their statutory right to the automatic stay's protection, one of the most important rights afforded to debtors by the Bankruptcy Code." *In re Schwartz-Tallard*, 803 F.3d at 1100.  "By providing robust remedies for debtors who prevail, the statute acts to deter creditors from violating the automatic stay in the first instance." *Id.*  "[B]y definition," debtors "will typically not have the resources to hire private counsel," and "in many cases the actual damages suffered by the injured debtor will be too small to justify the expense of litigation." *Id.*  Consequently, § 362(k)'s deterrent effect is fulfilled in part by allowing the recovery of attorney's fees incurred in prosecuting a stay violation, thereby "making it possible for persons without means to bring suit to vindicate their rights." *Id.* (quotation omitted).

However, courts have expressed the concern that debtors could use § 362(k) "as a sword rather than a shield." *In re Roman*, 283 B.R. 1, 11 (B.A.P. 9th Cir. 2002).  To curb this deleterious effect, courts have discretion to "eliminate unnecessary or plainly excessive fees" to "check . . . any abuses that might otherwise arise." *In re Schwartz-Tallard*, 803 F.3d at 1101. Thus, a court may make a reduction where fees "would not have been incurred but for the bringing of the [contempt] motion." *In re McHenry*, 179 B.R. 165, 168 (B.A.P. 9th Cir. 1995). But even in this situation, a debtor may be "justified in bringing the motion and in incurring additional attorney's fees" if "an award of punitive damages [was] warranted." *Id.*

The bankruptcy court did not abuse its discretion in declining to make an adjustment. The court acknowledged Rushmore's argument but rejected it based on its view that once Rushmore learned of the bankruptcy, any errors by the Moons regarding Rushmore's incorrect address no longer mattered because Rushmore had actual notice of the bankruptcy, yet it did

nothing to investigate the matter and continued to repeatedly contact the Moons.  Additionally, the bankruptcy court noted that Rushmore's unwritten policy, and its failure to advise the Moons of its policy, meant that Adnette had no way to know that Rushmore was ignoring Willie's report of the bankruptcy or that it would continue to contact the Moons until Adnette called them. There is nothing clearly erroneous about these findings.  Nor did the bankruptcy court exceed its permissible options by declining to reduce fees given Rushmore's willful, repeated violations of Adnette's automatic stay rights.  Even if another judge might have reached a different conclusion, it is not illogical or factually unsupported for the bankruptcy court to conclude there was a need to vindicate Adnette's rights and to deter Rushmore's conduct through a fee award.  I therefore affirm the bankruptcy court's decision not to reduce fees on proportionality or mitigation grounds.

### 5.  Total Fees

In sum, the total amount of attorney's fees and costs for the original contempt proceeding (including supplemental fees), the adversary proceeding, and the various appeals is $167,059.85. I note that the bankruptcy court included in its punitive damages analysis only $70,507.94 for the original contempt proceeding (plus supplemental fees) and $742.10 in Adnette's out-of-pocket expenses. ECF No. 21-7 at 13.

### B.  Punitive Damages

On remand, the bankruptcy court increased the punitive damage award from $200,000 to $500,000.  The bankruptcy court concluded that a higher multiplier was needed given the BAP's conclusion that Willie was not protected by the automatic stay.  In the bankruptcy court's view, this made Rushmore's conduct "far worse" because it was able to contact Willie, who also was a debtor, "without repercussion." ECF No. 21-7 at 17.  The bankruptcy court concluded that

1   Rushmore's conduct was even more reprehensible because its failure to investigate Adnette's

2   bankruptcy status after Willie advised Rushmore of it, combined with Willie's inability to sue for

3   damages to himself, allowed Rushmore to "continue dunning the non-borrower debtor." *Id.* at

4   19. The bankruptcy court noted that Rushmore's unwritten policy posed a risk to all similarly

5   situated borrowers. And it considered that Adnette and others like her are financial vulnerable

6   given they are in bankruptcy.

7       The bankruptcy court also concluded that in addition to a greater degree of

8   reprehensibility, further deterrence was needed because, in light of the BAP's ruling, Rushmore

9   could contact others in the same situation as Willie without violating the automatic stay. *Id.* at

10  20. The bankruptcy court concluded that Rushmore is not "self-policing" because its own

11  employees testified to Rushmore's unwritten policy. *Id.* The bankruptcy court thus increased the

12  punitive damages multiplier from 2:1 to 7:1. *Id.* at 21. The bankruptcy court noted that if it

13  included in the punitive damage analysis all fees it awarded, then the multiplier would be

14  approximately 2.48:1. *Id.* at 30.

15      Rushmore contends that the bankruptcy court's punitive damage award on remand

16  violates its due process rights because the bankruptcy court punished Rushmore (1) for Willie's

17  injuries, (2) for Rushmore's success on appeal and for pressing good faith defenses, and (3) for

18  calling the discharge violation claim unsuccessful. Rushmore also asserts that the bankruptcy

19  court erred by justifying the award as deterrence because Rushmore's contact with Willie

20  violated Adnette's stay, so there is no lack of repercussions, and because there is no evidence

21  that Rushmore engaged in similar conduct before, during, or after the situation with the Moons.

22  Finally, Rushmore argues that in a de novo review of the relevant factors, Adnette is entitled to

23  no or minimal punitive damages.

1   The Moons respond that the bankruptcy court's award on remand is constitutional

2   because the bankruptcy court properly determined that Rushmore's conduct was reprehensible.

3   They further argue that a 7:1 multiplier is not unconstitutional, particularly because Adnette did

4   not recover substantial actual damages.  Finally, the Moons argue that courts in other cases have

5   awarded a higher ratio of punitive to compensatory damages where compensatory damages are

6   low but the need to punish and deter is high.

7       I review for clear error the bankruptcy court's factual findings in conducting the inquiry

8   of whether a punitive damage award is unconstitutionally excessive. *Cooper Indus., Inc. v.*

9   *Leatherman Tool Grp., Inc.*, 532 U.S. 424, 435 (2001).  But I review de novo the

10  constitutionality of a punitive damage award. *Id.*  In doing so, I consider three guideposts: "the

11  degree of the defendant's reprehensibility or culpability, the relationship between the penalty and

12  the harm to the victim caused by the defendant's actions, and the sanctions imposed in other

13  cases for comparable misconduct." *Id.* (simplified).

14      The reprehensibility of Rushmore's conduct is the most important guidepost. *State Farm*

15  *Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).  To determine reprehensibility, courts

16  consider whether:

17          the harm caused was physical as opposed to economic; the tortious conduct
            evinced an indifference to or a reckless disregard of the health or safety of others;
18          the target of the conduct had financial vulnerability; the conduct involved
            repeated actions or was an isolated incident; and the harm was the result of
19          intentional malice, trickery, or deceit, or mere accident.

20  *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1036 (9th Cir. 2020), *rev'd and remanded on other*

21  *grounds*, 141 S. Ct. 2190 (2021).  The bankruptcy court could consider "evidence of actual harm

22  to nonparties" as part of the reprehensibility determination, but it cannot directly punish

23

1  Rushmore for injuring nonparties because that violates due process. *See Philip Morris USA v.*

2  *Williams*, 549 U.S. 346, 353-55 (2007).

3      "There is no bright-line rule about the maximum ratio due process permits between the

4  harm suffered by the plaintiff (i.e., the compensatory damages) and the punitive damages."

5  *Ramirez*, 951 F.3d at 1036-37.  But "awards exceeding a single-digit ratio will rarely satisfy due

6  process, and punitive awards exceeding four times the amount of compensatory damages might

7  be close to the line of constitutional impropriety." *Id.* (simplified).  However, a "ratio higher than

8  4 to 1 may be upheld where a particularly egregious act has resulted in only a small amount of

9  economic damages." *Id.* (quotation omitted).  In contrast, "when compensatory damages are

10  substantial, a ratio lower than 4 to 1 may be the limit." *Id.* (quotation omitted).

11      Finally, the purpose of looking to civil or criminal penalties that could be imposed for

12  comparable misconduct "is to accord substantial deference to legislative judgments concerning

13  appropriate sanctions for the conduct at issue." *In re Exxon Valdez*, 270 F.3d 1215, 1245 (9th

14  Cir. 2001) (quotation omitted).

15      I begin with reprehensibility because it is the most important guidepost.  In its original

16  contempt order, the bankruptcy court found Rushmore's conduct reprehensible because it

17  "adopted express procedures to narrow the sources of bankruptcy information that it is willing to

18  acknowledge and does not even tell its borrowers what those sources are," thereby allowing

19  Rushmore to "maintain a veil of ignorance" about Adnette's and other borrowers' bankruptcies.

20  ECF No. 22-2 at 58-59.  But the bankruptcy court decided not to apply a "large multiplier

21  because, unlike other cases, Rushmore did not formally initiate or complete foreclosure

22  proceedings on the Residence." *Id.* at 59.  On remand, the bankruptcy court concluded that

23  Rushmore's conduct was even more egregious because Willie and those like him were no longer

protected by the automatic stay given the BAP's ruling, so Rushmore could contact them without repercussion. The bankruptcy court therefore increased the multiplier from 2:1 to 7:1.

The bankruptcy court's punitive damage award on remand violates due process both because it punishes Rushmore directly for harm caused to third parties and because the ratio of 7:1 is excessive in these circumstances. Although the bankruptcy court properly could consider the harm to third parties in determining reprehensibility, it could not directly punish Rushmore for harm to third parties. But it is apparent that the bankruptcy court's substantial increase of both the multiplier and the overall monetary amount on remand was based on the harm caused to Willie and the potential harm caused to others similarly situated to Willie, and involved little analysis of the harm to Adnette. Additionally, a 7:1 ratio is rarely constitutionally appropriate, and it is not appropriate here, particularly given the bankruptcy court's initial decision to not apply a large multiplier. Despite what the Moons argue, tens of thousands of dollars in attorney's fees is a substantial actual damages award, so this is not a case where an insubstantial fee award might support a high punitive damage award ratio. *See Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co.*, 405 F.3d 764, 776 (9th Cir. 2005) (stating that $50,000 in "economic damages were substantial").

When a punitive damage award is unconstitutional, I may "decide on a case-by-case basis whether to remand for a new trial or simply to order a remittitur." *Ramirez*, 951 F.3d at 1037. The parties have been litigating this case for years and the evidentiary record before the bankruptcy court is closed. Consequently, there is no benefit to a remand that will only delay a final resolution and consume more resources in an already costly case. The parties and the courts are served by bringing this litigation to a close as quickly and efficiently as is possible at this point.

On de novo review, I begin with the question of what actual damages to base a punitive damage award upon. The bankruptcy court included only the original contempt and supplemental fees, totaling $70,507.94. I add to that the fees of $14,827 that Adnette incurred in defending against the adversary because those were actual damages Adnette incurred in defending her automatic stay violation claim before the bankruptcy court. I do not include appellate fees because I do not find Rushmore's appeals worthy of punishment and I am generally disinclined to deter a party from exercising its appellate rights. There is no basis to conclude that Rushmore's appeals were frivolous or brought in bad faith. Consequently, the amount of compensatory damages that I consider in evaluating a proper punitive damage award is $85,334.94.

I conclude a 1.5 multiplier appropriately serves the twin goals of punishment and deterrence. Rushmore's conduct caused Willie (but not Adnette) emotional distress, but it caused no physical harm and did not evince an indifference to or a reckless disregard of the health or safety of others. Adnette, as a debtor, was financially vulnerable and Rushmore's conduct was repeated as to her and her husband. But there is no evidence that Rushmore engaged in similar conduct toward any other borrower. And there is no evidence that Rushmore engaged in intentional malice, trickery, or deceit. As the bankruptcy court noted, Rushmore's conduct led it to repeatedly contact a debtor and her spouse at their residence despite having actual notice of the bankruptcy, thus depriving Adnette of the breathing space the automatic stay is meant to provide. Punitive damages thus are warranted to both punish this conduct and deter similar conduct in the future.

A 1.5 ratio between compensatory and punitive damages is well within constitutional parameters. And although this will result in an award that is substantially higher than the

comparable awards that the bankruptcy court noted in its original contempt order, I agree with the bankruptcy court that a higher award is warranted because Rushmore's stay violation was "not a situation involving a rogue employee, but the acts of representatives that Rushmore touts as properly trained." ECF No. 22-2 at 60.  Consequently, I award Adnette $128,002.41 in punitive damages.

**C.  Final Award**

As detailed in this order, I award Adnette Moon the following:

1. $742.10 in pecuniary damages;

2. $167,059.85 in attorney's fees and costs; and

3. $128,002.41 in punitive damages.

**TOTAL:  $295,804.36**

**IV. CONCLUSION**

I THEREFORE ORDER that the bankruptcy court's order on remand is affirmed in part and reversed in part as set forth in this order.  I direct the clerk of court to enter judgment in favor of Adnette Gunnels-Moon (but not Willie Moon) and against Rushmore Loan Management Services, LLC in the amount of **$295,804.36**.  The clerk of court is instructed to close this case.

DATED this 6th day of February, 2023.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE